[Civ. No. 29583. Fourth Dist., Div. Two. June 29, 1983.]

GLOBAL VAN LINES, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
V.I.P. MOVERS, INC., Real Party in Interest.

---

COUNSEL

Meserve, Mumper & Hughes and L. Allan Songstad, Jr., for Petitioners.

No appearance for Respondent.

Floyd L. Farano and Charles M. Farano for Real Party in Interest.

---

OPINION

KAUFMAN, J.—Defendants and petitioners Global Van Lines, Inc. (Global) and U. C. Moving Services, Inc. (UC) petition for a writ of mandate to command the superior court to disqualify the law office of Floyd L. Farano[1] from representing plaintiff and real party in interest V.I.P. Movers, Inc. (VIP), or any other party in Orange County Superior Court action No. 388011 entitled V.I.P. Movers, Inc. v. U.C. Moving Services, Inc.; Global Van Lines, Inc., et al.

### FACTS AND STATEMENT OF THE CASE

On October 6, 1982, VIP sued Global and UC for breach of contract. The contract, incorporated into the complaint by reference, appointed VIP as Global's "Domestic agent" for Santa Clara County. In the contract, VIP agreed to "perform the duties set forth in the currently effective 'Schedule of Agents' Duties,'" while Global agreed that it would "not franchise, nor empower any other agent to operate or . . . directly or indirectly, compete with" VIP in Santa Clara County.

The complaint alleges that Global breached the contract by interfering with VIP's customers and allowing other agents to solicit accounts and per-

---

[1] VIP does not contest Global's assertion that the disqualification of Mr. Farano would require also the disqualification of the rest of his firm.

form services in Santa Clara County. It is alleged that UC is a "conduit" through which Global is carrying on its business; that there is a unity of interest and ownership between Global and UC; that Global owns 90 percent of UC's stock; and that Global has told prospective VIP customers that UC has the right to solicit business in Santa Clara County. The complaint asks for $2 million in compensatory and $5 million in punitive damages, specific performance of the contract, an accounting, and an injunction commanding Global and UC to cease interfering with VIP's customers.

On November 2, 1982, Global moved to disqualify Floyd L. Farano and his office from acting as VIP's attorney in the action on the ground that Farano had confidential information of Global's affairs germane to issues in the action as a result of his being general counsel for Global for a period of 16 years, including the time at which Global acquired UC's stock and the time at which this dispute originated. The motion was supported by the declaration of Kenneth S. Ogden, Global's current general counsel. In his declaration Ogden averred that Farano was employed by Global as its general counsel from January 1, 1962, to April 1, 1977; that during that time Farano was the "chief legal officer of GLOBAL and was responsible for overseeing all legal matters on behalf of the corporation and its various subsidiaries and related companies"; and that "all questions of a legal nature came to the attention of the legal department which was then run by Mr. Farano." The declaration also recited that Farano "handled, to a major extent," Global's acquisition of UC's stock in 1976, and was "aware of GLOBAL's policy concerning agency relations and was fully conversant with GLOBAL's standard Agency Agreement."

In its opposition to the motion, VIP submitted Floyd Farano's declaration. In it Mr. Farano stated he was general counsel for Global from 1961 until February 15, 1977, and that during that time, he was "responsible to oversee all legal matters known to [him] or someone acting under [his] direction" but "[a]ll legal questions or questions of a legal nature did not come to [his] attention. . . . [M]any questions involving legal issues which existed during [his] employment . . . did not come to [his] attention." The declaration further states that Farano had "no personal knowledge of the present dispute between V.I.P. and GLOBAL VAN LINES, et al., other than that obtained through communications with [his] client just prior to the institution of this litigation." It states "categorically" that Farano had no information or recollection "material to this case."

Mr. Farano also declared that "[t]o the best of [his] recollection [he] never had any conversation with anyone employed by GLOBAL or U.C., nor did [he] receive any interoffice memoranda or letters concerning the dis-

pute." He stated that the agency agreement was the "standard agency agreement" which was "substantially the same" on the day he became general counsel as when he left Global's employment. He further declared the agency agreement with VIP was "not negotiated" by him, and that he had "no knowledge of what took place during the negotiations and to the best of [his] recollection did not communicate with anyone concerning the agreement." Indeed, "[t]o the best of [his] recollection [he does] not believe that the document was prepared by anyone in the legal department."

Mr. Farano admitted that he was "responsible for the preparation and did prepare the documents involved in the purchase of" UC stock but "the only documents which were prepared by [him] were those necessary to effect the stock purchase. [He has] no recollection of any communications with anyone that would be material to the issue of alter ego." He also stated that he has "become intimately familiar with the household goods moving industry" and counsel for Global had told him, in a telephone conversation, that Global's management wanted him removed from the case because he had " 'too much knowledge of the industry.' "

Eight days after Global filed its disqualification motion, VIP moved for a preliminary injunction, asking the court to restrain Global from diverting business in Santa Clara County from VIP. Accompanying the motion were two Global interoffice memos from 1975, each addressed to executives at both UC and VIP, indicating that there had been difficulties with the agency agreement with VIP. One of the memos specifically covered the topic of the "Territorial Responsibility and Area of UC Moving and VIP."

On December 9, the court ruled on the disqualification motion in a minute order, denying the motion "without prejudice to renew the motion if subsequent discovery (including interrogatories or deposition testimony of Floyd Farano) reveals that Mr. Farano obtained confidential information during his prior employment which would be adverse to the interests of his former clients, defendants herein, making disqualification appropriate." The petition for writ of mandate followed and we issued an alternative writ.

DISCUSSION

■ Global contends that Farano should be disqualified because he has accepted employment adverse to his former client. Under the facts of this case the contention is well taken.

■ The ethics of the legal profession in California prohibit a lawyer from accepting employment adverse to a former client "relating to a matter in reference to which he has obtained confidential information by reason of

or in the course of his employment by such . . . former client."[2] Under this rule, the initial question is "whether the former representation is 'substantially related' to the current representation." (See *Trone* v. *Smith* (9th Cir. 1980) 621 F.2d 994, 998, and authorities cited therein.)[3]

■ In the present case, the uncontroverted evidence set forth by the affidavits and related pleadings in the trial court demonstrate in several respects a substantial relationship between Farano's former representation of Global and his current representation of VIP against Global. In the first place, the difficulties between Global and VIP concerning the agency agreement arose during Farano's tenure as Global's general counsel. The existence of the two Global interoffice memos from 1975 reveal that VIP had become dissatisfied with Global's handling of its agency agreement. A reasonable inference is that at some point before the memo was written VIP had complained in some way to Global about the situation. While Mr. Farano may not have any present recollection of such a complaint being brought to his attention, he was then the head of the legal office of Global to which such a potential legal problem would logically have been referred.

In the second place, the present litigation involves VIP's complaint that Global has violated its agency agreement with VIP by giving to UC, among others, business that should have, allegedly, gone to VIP. Thus, the Global-UC relationship is involved in the breach of the Global-VIP contract, and Mr. Farano was general counsel at the time of and was instrumental in the very inception of the Global-UC relationship. The Global-UC relationship and the alter ego issue it presents are directly related to Global's purchase of UC, and Mr. Farano was admittedly involved directly in that transaction.

Finally, in the third place, Global's "antitrust" defense to this action necessarily implicates Farano's previous role as Global's general counsel. In its answer to the complaint, Global has alleged that VIP's interpretation of the Global-VIP contract would violate antitrust laws. Global's defense in the present action may thus depend on the intent and conduct of its top

---

[2]Rule 4-101, Rules of Professional Conduct.

[3]The "substantial relationship" test has been widely recognized and applied in the federal courts since its enunciation in *T.C. & Theatre Corp.* v. *Warner Bros. Pictures* (S.D.N.Y. 1953) 113 F.Supp. 265, 268. The rule has been recently employed by courts in all circuits, with the apparent exception of only the First and Fourth Circuits. (See, e.g., *Lemelson* v. *Synergistics Research Corp.* (S.D.N.Y. 1981) 504 F.Supp. 1164, 1166-1167; *Baglini* v. *Pullman, Inc.* (E.D.Penn. 1976) 412 F.Supp. 1060, 1064; *Duncan* v. *Merrill Lynch, Pierce, Fenner & Smith* (5th Cir. 1981) 646 F.2d 1020, 1028, cert. den. 454 U.S. 895 [70 L.Ed.2d 211, 102 S.Ct. 394]; *General Elec. Co.* v. *Valeron Corp.* (6th Cir. 1979) 608 F.2d 265, 267, cert. den. 445 U.S. 930 [63 L.Ed.2d 763, 100 S.Ct. 1318]; *Freeman* v. *Chicago Musical Instrument Co.* (7th Cir. 1982) 689 F.2d 715, 722; *State of Ark.* v. *Dean Foods Products Co., Inc.* (8th Cir. 1979) 605 F.2d 380, 383, overruled on other grounds, *In re Multi-Piece Rim Products Liability* (8th Cir. 1980) 612 F.2d 377, 378; *Trone* v. *Smith, supra,* 621 F.2d 994,.998; *Williamsburg Wax Museum* v. *Historic Figures* (D.D.C. 1980) 501 F.Supp. 326, 328.)

management toward the company's agency agreements in general. A corporate general counsel is the legal advisor to the firm's top management and in the absence of proof to the contrary it must be presumed that during his 15 years as general counsel, Mr. Farano acquired substantial knowledge of the policies, attitudes and practices of Global's management in respect to its entering into and carrying out its agency agreements. (See *Chugach Elec. Ass'n. v. United States D.C. for Dist. of Alaska* (9th Cir. 1966) 370 F.2d 441, 443, cert. den. 389 U.S. 820 [19 L.Ed.2d 71, 88 S.Ct. 40]; see *Developments in the Law: Conflicts of Interest in the Legal Profession* (1981) 94 Harv.L.Rev. 1244, 1335.) In his declaration, Mr. Farano did not disclaim such knowledge.

█ VIP urges that rule 4-101 (see text opposite fn. 2, *ante*) contemplates a case in which the attorney obtained confidential information in the former representation and argues that the trial court's ruling implies a determination as a matter of fact that Farano obtained no confidential information regarding the current dispute from his former client. However, it is well settled that actual possession of confidential information need not be proved to disqualify an attorney from representing the adversary of a former client in litigation against the former client. (*People* ex rel. *Deukmejian* v. *Brown* (1981) 29 Cal.3d 150, 156 [172 Cal.Rptr. 478, 624 P.2d 1206]; *Trone* v. *Smith, supra,* 621 F.2d 994, 999; see *Industrial Indem. Co.* v. *Great American Ins. Co.* (1977) 73 Cal.App.3d 529, 535 [140 Cal.Rptr. 806]; see also *Yorn* v. *Superior Court* (1979) 90 Cal.App.3d 669, 675 [153 Cal.Rptr. 295].)

When a substantial relationship has been shown to exist between the former representation and the current representation, and when it appears by virtue of the nature of the former representation or the relationship of the attorney to his former client confidential information material to the current dispute would normally have been imparted to the attorney or to subordinates for whose legal work he was responsible, the attorney's knowledge of confidential information is presumed. (See *People* ex rel. *Deukmejian* v. *Brown, supra,* 29 Cal.App.3d at pp. 155-156.)

This is the rule by necessity, for it is not within the power of the former client to prove what is in the mind of the attorney. Nor should the attorney have to "engage in a subtle evaluation of the extent to which he acquired relevant information in the first representation and of the actual use of that knowledge and information in the subsequent representation." (*Developments in the Law: Conflicts of Interest in the Legal Profession, supra,* 95 Harv.L.Rev. 1244, 1318; accord: *Anderson* v. *Eaton* (1930) 211 Cal. 113, 116-117 [293 P. 788].)

VIP contends that what really motivates Global to move for Farano's disqualification is that he has "superior knowledge of the industry and its general method of operation." Be that as it may, it is not Farano's superior knowledge of the industry which requires his disqualification in this case, but his having been Global's general counsel for 15 years during which he and his subordinates in the office were involved in matters bearing a substantial relationship to issues in the current litigation.

Finally, VIP argues that no writ of mandate should issue in this case because Global has an adequate remedy in the normal course since the trial court left open the possibility that Farano could be disqualified at a later date if subsequent discovery reveals that he in fact obtained confidential information adverse to his former client. VIP points out in this regard that Farano has stated that if evidence indicating a conflict is presented he will resign from the case. But an attorney should not put either himself or his client in such a position. (See *Anderson* v. *Eaton, supra,* 211 Cal. at p. 117.) If after months or years of discovery, and the expenditure of great amounts of time and money, evidence should turn up revealing Farano in fact has confidential information bearing on the dispute, VIP would suffer even greater inconvenience and expense from his belated withdrawal than from his present disqualification.

### DISPOSITION

Let a peremptory writ of mandate issue commanding the Orange County Superior Court to vacate its order denying Global's motion for the disqualification of the law offices of Floyd L. Farano as VIP's attorney and to make a new order granting the motion. The alternative writ is discharged. In the interests of justice the parties shall bear their own respective costs of this proceeding.

Morris, P. J., and McDaniel, J., concurred.