[Civ. No. 33440. Fourth Dist., Div. Two. Aug. 23, 1984.]

SHIRLEY M. JOHNSON, Individually and as Co-conservator, etc.,
Petitioner, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
IRA L. JOHNSON, Individually and as Co-conservator, etc.,
Real Party in Interest.

574

## COUNSEL

Henry V. Cleary and Walter Talley for Petitioner.

No appearance for Respondent.

Cal McIntosh, Schlecht, Shevlin & Shoenberger, Jon A. Shoenberger and Joel Miliband for Real Party in Interest.

OPINION

KAUFMAN, J.—Shirley M. Johnson (petitioner) petitions for a writ of mandate to require the Riverside County Superior Court to vacate its order of February 14, 1984, which sustained Ira L. Johnson's (real party in interest's) demurrer without leave to amend and disqualified petitioner's counsel Henry V. Cleary (Cleary).

*Facts*

In her individual capacity, petitioner, the mother and co-conservator of an adult developmentally disabled child, brought the underlying action for child support against real party, her former husband, co-conservator and father of the child. Real party demurred on the ground that because there was no statutory authority or case law authorizing one parent to sue the other for support of an incapacitated adult child, no cause of action was stated against him. Real party also moved to disqualify petitioner's counsel on the ground he had obtained confidential information in previously representing real party or real party and petitioner jointly.

A hearing on the motion for disqualification was conducted on January 25, 1984, and was submitted on the papers in the file including a supporting declaration by real party and Henry V. Cleary's declaration in opposition. These papers indicate the following facts.

In 1965, Cleary acted as real party's attorney in a collection matter involving his architectural business. In 1969, Cleary acted as attorney for both parties in a matter pertaining to the prospective sale of their home. The parties owned a family corporation known as Ira L. Johnson & Associates which operated three divisions. Domus Designs was the interior design division operated by petitioner. It maintained separate books, bank accounts, and records. In 1980, Cleary represented petitioner as counsel in a variety of legal problems concerning Domus Designs. One such matter concerned a business associate of both petitioner and real party. Litigation against this associate was brought in the name of Johnson & Associates.

The motion to disqualify was also based in part on a letter written by Cleary to real party on December 11, 1980, in which Cleary informed real party that he could not represent either party in any future dispute between

them because he had acted as a witness in respect to the sending of a letter from petitioner to real party.

On February 14, 1984, the trial court granted the motion to disqualify petitioner's counsel and sustained the demurrer without leave to amend.

Following this order, petitioner in her capacity as co-conservator of the child filed a petition for instructions in the conservatorship proceeding seeking authority to proceed against real party individually, without joining him in his capacity as joint conservator, to enforce his duty of contributing to the support, education, and maintenance of their disabled adult child. Real party for his part requested the court in the conservatorship proceeding to determine where the child should most beneficially live and the child's need for support and maintenance, stipulating, we are informed in his memorandum in opposition to the petition for writ, "that the Court shall have jurisdiction to order him to share with the Petitioner in the support of their adult developmentally disabled daughter according to his ability and her needs."

After a hearing, real party's request was granted and an investigation is under way we are told. Petitioner's petition for instructions was neither denied nor granted but was rather continued to June 8, 1984, for a full hearing on the merits.[1]

The petition for writ of mandate followed and we issued an alternative writ directing the Riverside Superior Court to show cause why its order sustaining real party's demurrer without leave to amend and disqualifying petitioner's attorney in the child support action dated February 14, 1984, should not be set aside and vacated.

*Discussion*

I

■ The trial court erred in disqualifying petitioner's attorney.

The California Rules of Professional Conduct prohibit "[a] member of the State Bar [from accepting] employment adverse to a . . . former client, without the informed and written consent of the . . . former client, relating

---

[1]Although petitioner contends the court erred in denying her request for instructions, we issued the alternative writ only with respect to the trial court's order sustaining the demurrer without leave to amend and the disqualification of petitioner's attorney. Thus, this contention is beyond the scope of the alternative writ. We observe, however, that in the circumstances shown, no abuse of discretion in the court's failure to act immediately on petitioner's request for instructions has been demonstrated.

to a matter in reference to which he has obtained confidential information by reason of or in the course of his employment by such . . . former client." (Rule 4-101, Rules Prof. Conduct.) The applicability of rule 4-101, however, is dependent upon the particular facts of each case. "Mere prior professional association with the former client is not enough." (*Quaglino* v. *Quaglino* (1979) 88 Cal.App.3d 542, 549 [152 Cal.Rptr. 47].)

Under rule 4-101 the threshold question is " 'whether the former representation is "substantially related" to the current representation.' " (*Global Van Lines, Inc.* v. *Superior Court* (1983) 144 Cal.App.3d 483, 488 [192 Cal.Rptr. 609], quoting *Trone* v. *Smith* (9th Cir. 1980) 621 F.2d 994, 998.) In this instance, the declarations and papers provided to the trial court failed to establish any substantial relationship between Cleary's former representation of real party and his current representation of the petitioner in the underlying action for adult child support.

It is undisputed that Cleary represented: (1) real party in 1965 in a collection matter, (2) both parties in the potential sale of their home in 1969, (3) petitioner in 1979-1980 in connection with legal problems of Domus Designs, one of which involved a business associate of both petitioner and real party, and (4) Johnson & Associates, Inc., a family corporation. None of those matters, however, related in any way to the present action for adult child support. Although Cleary did represent the family corporation in the past, he did so only in connection with a particular division of the corporation known as Domus Designs which kept separate books and records and which was under the sole management and control of petitioner.

Real party relies on *Woods* v. *Superior Court* (1983) 149 Cal.App.3d 931 [197 Cal.Rptr. 185], for the proposition that a former client need not prove actual possession of confidential information to warrant an attorney disqualification. Although it is often stated that actual possession of confidential information need not be shown, this court has recently pointed out that the possession of confidential information will be presumed only when "a substantial relationship has been shown to exist between the former representation and the current representation, and when it appears by virtue of the nature of the former representation or the relationship of the attorney to his former client confidential information material to the current dispute would normally have been imparted to the attorney . . . ." (*Global Van Lines, Inc.* v. *Superior Court, supra,* 144 Cal.App.3d 483, 489; see *People ex rel. Deukmejian* v. *Brown* (1981) 29 Cal.3d 150, 155-156 [172 Cal.Rptr. 478, 624 P.2d 1206].) In *Woods,* for example, the attorney had for many years represented the interests of a family corporation and was presently representing the wife's interest in the family business. He then undertook to represent the wife in a dissolution proceeding wherein the family business

proved to be the focus of the litigation. Here, however, the subject matter involved in Cleary's previous employment by the parties has no relationship at all to the subject matter of the adult child support action.

■ Real party urges, however, that Cleary gained from his former representation of real party special knowledge of real party's assets and therefore should be disqualified from representing petitioner in her attempt to obtain financial support for their adult child, presumably because such information might be utilized in establishing real party's ability to pay or perhaps in enforcing any order for support that might be made. We do not agree.

In the first place what must be shown is that the attorney has obtained as a result of the earlier representation knowledge of otherwise confidential information that if used in the present litigation would place the former client at an unfair advantage. Most probably, in representing real party and the family corporation Cleary did learn something about the nature and extent of real party's assets at that time. However, the latest of the former representations occurred more than eight years before the present action was instituted and the significance of whatever financial information was imparted has no doubt been substantially attenuated by the passage of so much time. Moreover, the parties have recently engaged in a dissolution of marriage. Cleary represented neither party in the dissolution, and the public court records in that case undoubtedly reveal more current financial information about real party than any Cleary could possess more than eight years after his last representation of real party. Thus, there is no showing Cleary has any *confidential* information that could be used to real party's disadvantage.

The record also reveals that real party is not truly concerned he will be disadvantaged by the use of any information Cleary has about real party's assets. In the conservatorship proceeding real party has asked the court to determine what support the child needs and has stipulated the court may "order him to share with the Petitioner in the support of their adult developmentally disabled daughter *according to his ability* and her needs." (Italics added.) By agreeing to an order based on "his ability" real party obviously anticipates a determination in the conservatorship proceeding of his ability to pay support which, of course, absent a stipulation will involve an examination into his assets and income. But Attorney Cleary also represents petitioner in the conservatorship proceeding and real party has not sought to disqualify Cleary as petitioner's attorney in that proceeding. It is rather clear that real party's reliance to disqualify Cleary in this action on Cleary's alleged knowledge of his assets is but a makeweight.

Finally, real party argues that no writ of mandate should issue because Cleary had previously written a letter to him indicating that because Cleary was acting as a witness to the mailing of a letter from petitioner to real party Cleary would be unable to represent "either of you in the event of a dispute between you." Cleary's declaration explains that this letter was written because of a dispute between the parties with respect to alleged forgeries of petitioner's name by real party on business documents and petitioner's concern real party would deny receiving her letter. As is apparent, the language used in the letter could well be interpreted as stating Cleary could not act as attorney in any dispute between the parties concerning the alleged forgeries, not that he would be disqualified in all disputes of any nature. Cleary's declaration also discloses that at the time he wrote the letter he did not fully comprehend the somewhat ill-defined rules relating to mandatory attorney disqualification. In any event, the letter did not mislead real party, was not relied upon by him, was not related to any matter involved in the current litigation, and does not furnish a basis for Cleary's court-imposed disqualification to act as petitioner's attorney in the underlying action.

Aside from the claim of special knowledge of real party's assets already discussed, there is no claim of detriment to real party nor any indication, even by category, of what, if any, confidential information was obtained by Cleary that would have a bearing on the underlying action. ■ The right of a party to be represented in litigation by the attorney of his or her choice is a significant right (see *Lyle* v. *Superior Court* (1981) 122 Cal.App.3d 470, 481 [175 Cal.Rptr. 918]) and ought not to be abrogated in the absence of some indication the integrity of the judicial process will otherwise be injured or the adverse party will otherwise be unfairly disadvantaged by the use of confidential information obtained as a result of the earlier representation. (*Id.*, at p. 482.)

## II

■ The trial court sustained real party's demurrer on the ground that the action for support of the developmentally disabled adult child could not be maintained by petitioner in her individual capacity but must be brought in the name of the child by her guardian ad litem or conservator. Petitioner contends Civil Code section 4703 authorizes her to maintain the action in her individual capacity.

We observe that even if real party were correct, the demurrer should not have been sustained without leave to amend. ■ Sustaining a demurrer without leave to amend constitutes an abuse of discretion if there is a reasonable possibility the defect can be cured by amendment. (*Powers* v. *Ash-*

*ton* (1975) 45 Cal.App.3d 783, 790 [119 Cal.Rptr. 729]; see 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 844, p. 2449.) ■ Where it appears an action has been commenced by an improper party, the defect may be cured by an amendment substituting a proper party plaintiff. (*Klopstock* v. *Superior Court* (1941) 17 Cal.2d 13, 19-22 [108 P.2d 906, 135 A.L.R. 318]; *Powers* v. *Ashton, supra,* 45 Cal.App.3d 783.) ■ In any event, however, we are persuaded that petitioner is correct that maintenance of the action in her individual capacity is authorized by Civil Code section 4703.

The language of that code section seems plain enough. It reads: "When a parent has the duty to provide for the support, maintenance, or education of his [or her] child and willfully fails to so provide, *either parent,* or the child by his [or her] guardian ad litem, *may bring an action in the superior court against the errant parent for the support, maintenance, or education of the child.*" (Italics added.) Real party appears to concede that both he and petitioner have a duty to provide for the support of their developmentally disabled adult daughter under Civil Code section 206.[2] He urges in effect, however, that as used in Civil Code section 4703 the expressions "his child" and "the child" refer exclusively to a minor child, not to a disabled adult child. Although the question is not without some difficulty, we are persuaded that real party's suggested interpretation of section 4703 is mistakenly too narrow.

Real party first points out that the jurisdiction of the family law court to order child support is, in the absence of a stipulated agreement between the parties (see Civ. Code, § 4700.9), limited to support for minor children. In this, real party is correct. (See Civ. Code, § 4700, subd. (a); *In re Marriage of Lieberman* (1981) 114 Cal.App.3d 583, 586 [170 Cal.Rptr. 757]; *Levy* v. *Levy* (1966) 245 Cal.App.2d 341, 363-364 [53 Cal.Rptr. 790].) However, the present action for adult child support was not instituted by wife in the family law court; on the contrary, it was instituted as an independent action in the superior court sitting as a court of general jurisdiction. ■ An independent action in the superior court to enforce a parent's obligation to support an adult child who is unable to provide for himself or herself has been authorized in this state for many years. (See *Tuller* v. *Superior Court* (1932) 215 Cal. 352, 355 [10 P.2d 43]; *Paxton* v. *Paxton* (1907) 150 Cal. 667, 672 [89 P. 1083]; *In re Marriage of Lieberman, supra,* 114 Cal.App.3d 583; *Levy* v. *Levy, supra,* 245 Cal.App.2d 341.)

■ Thus, the instant action for adult child support is authorized; the question is whether it may be maintained by petitioner in her individual

---

[2]Civil Code section 206 provides in pertinent part: "It is the duty of the father [and] the mother . . . of any person in need who is unable to maintain himself [or herself] by work, to maintain such person to the extent of their ability."

capacity as a parent. Real party contends the *Paxton, Tuller* and *Lieberman* decisions establish that the action may be maintained only in the name of the child. We do not so read the decisions,[3] but even if they so indicated, they could hardly countermand the express language of Civil Code section 4703 which, in the event of a wilful failure to provide support, specifically authorizes the maintenance of an action for support of a child against a parent by the other parent.

Thus, our attention is returned to the language of Civil Code section 4703. It is of course conceivable the Legislature intended the expressions "his child" and "the child" as used in the section to refer only to a minor child. That intent may in fact be suggested by the statutory alternative that the action referred to in section 4703 be instituted by "the child by his guardian ad litem." While many adult children who are unable to provide for themselves may also lack capacity and require a guardian ad litem for litigation, not all adult children who are unable to provide for themselves necessarily require the appointment of a guardian ad litem.

■ However, the language of a particular code section must be construed in light of and with reference to the language of other sections accompanying it and related to it with a view to harmonizing the several provisions and giving effect to all of them. (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 918-921 [80 Cal.Rptr. 89, 458 P.2d 33].) ■ A review of the sections accompanying and related to Civil Code section 4703, to wit, Civil Code sections 4700, 4700.5, 4700.9, 4701, 4702, 4704 and 4707, discloses that in each instance in which the Legislature

---

[3]With one possible exception none of the cases cited by real party discuss or deal with the question of whether the authorized independent action in superior court must be brought in the name of the child or may be maintained by a parent. The possible exception is *Paxton* v. *Paxton, supra,* 150 Cal. 667. In that case two actions for adult child support were involved. Both were in fact instituted in the names of the children. (150 Cal. at p. 668.) However, in determining the actions were authorized under the law, the court stated in part: "Section 206 of the Civil Code is a part of the substantive law of the land, and establishes and declares a legal duty of the parent to maintain their children who are within its provisions, and establishes the right in such children to have such maintenance. As the duty runs to the children, the latter are the persons to whom the right imposed by the duty accrues; and *they are the proper parties to an action to enforce such right* and compel the performance of such duty." (150 Cal. at p. 672, italics added.)

Of course, the question whether the children were the only persons who could maintain the action was not before the court because the actions were brought in the names of the children. Thus, if the language of the court is given the interpretation that the children were the only persons who could maintain the actions, the court's statement was a dictum. In our view what the court intended to say was that inasmuch as the duty ran to the children they were certainly proper parties to bring the actions. Such a conclusion, however, would not necessarily preclude the other parent who is also liable for support of the child from instituting such an action.

In any event, whatever the court meant, its decision antedated by many years the enactment of Civil Code section 4703.

intended the word child to be limited to either a minor child or an adult child it has expressly so indicated by using the words "minor child," "minor children," or "adult children" or the context in which the unqualified words "the child" have been used make its reference to one or the other unequivocally plain.

For example, section 4700, subdivision (a), commences: "In any proceeding where there is at issue the support of a *minor child,* the court may order either or both parents to pay any amount necessary for the support, maintenance, and education of the child. At the request of either party, the court shall make appropriate findings with respect to the circumstances on which the order for the support of a *minor child* is based." (Italics added.) Having used the words "minor child" in the first sentence, there was no need whatever to qualify the word "child" in the second sentence by the adjective "minor," and the Legislature's doing so is indicative of a conscious and careful attempt to differentiate between a minor child and all children where it intended application of the statute to be restricted to minor children. Notably, subdivision (c) of the same section provides: "In the event obligations for support of *a child* are discharged in bankruptcy, the court may make all proper orders for the support, maintenance and education of *the child,* as the court may deem just." (Italics added.) In view of the Legislature's care in qualifying the word "child" by the word "minor" in subdivision (a), it would almost certainly have included the same qualification in subdivision (c) had it intended to restrict application of subdivision (c) to a support order for a minor child. It apparently chose not to restrict the application of subdivision (c) to orders for the support of a minor child because the discharge in bankruptcy of an order for support would leave the needy child in the same unsupported condition whether the child be a minor or an adult. Thus, the Legislature used the unmodified terms "a child" and "the child" which it apparently meant to refer to any child whether minor or adult. These are virtually the same terms used in section 4703.

In section 4700.9 where the Legislature was dealing with the court's authority to approve a stipulated agreement by the parties to pay support for any adult child unable to provide for his or her own support, the Legislature specifically referred to "the support of any *adult* children." (Italics added.)

Like subdivision (a) of section 4700, subdivision (a) of section 4701 twice modifies the word "child" by the adjective "minor" in the first sentence, although the second use of the adjective was entirely unnecessary grammatically.

Section 4702 in both subdivision (a) and subdivision (b) restricts its application to support being received for "minor children" and "any minor children of the marriage."

Section 4704 relates to orders for the support of "a child" made prior to March 4, 1972, but the substantive content of the statute makes it clear it could only apply to orders made for the support of a minor. It provides that such orders may be modified "without terminating such award at the age of majority based on 18 years of age."

Finally, section 4707 could only apply to a minor child because it refers to "the issue of custody." And again the Legislature has expressly modified the word "child" by the adjective "minor."

It is therefore quite clear that in enacting these related sections the Legislature was fully aware of the need to differentiate between "minor" children or "adult" children and other children where it intended to limit applicability of a particular provision to minor children on the one hand or adult children on the other. Accordingly, the Legislature's use in section 4703 of the unqualified words "his child" and "the child" must be deemed to have been a conscious, deliberate choice intended to refer to any child owed a duty of support by a parent.

Attempting to persuade us to the contrary, real party depicts a parade of horribles, including the institution of unwarranted, duplicative and successive actions for support by vindictive former spouses, and he asserts the decision whether or not to file an action for support should be left to the child. Nonsense!

In many if not most instances, as in the case at bench, the needy adult child will not be able to determine his or her need for support or to make a reasoned decision whether or not to institute an action for support. Moreover, no action for support of an adult child can succeed unless the statutory prerequisites are proven, including the need of the child, the ability of the parent and, under Civil Code section 4703, a wilful failure to provide support. If an action for support should be instituted maliciously and without probable cause by a former spouse the remedy of malicious prosecution is available, and duplicative or successive actions may be avoided by the defendant in an action instituted by the other parent through the simple expedient of having a guardian ad litem appointed for the child and joining the child by his or her guardian ad litem as a party to the action so that all interested parties will be bound by the judgment.

We conclude an action for support of the developmentally disabled adult child of the parties may be maintained by petitioner in her individual ca-

pacity as parent of the child pursuant to Civil Code section 4703 and that real party's demurrer was improvidently sustained.[4]

### III

Let a peremptory writ of mandate issue to the Riverside County Superior Court commanding it to vacate its order sustaining real party's demurrer to the complaint without leave to amend and granting real party's motion for the disqualification of Henry V. Cleary as petitioner's attorney and to make new orders overruling the demurrer and denying the motion for disqualification. The alternative writ is discharged. Petitioner shall recover her costs of this writ proceeding.

Morris, P. J., and McDaniel, J., concurred.

The petition of real party in interest for a hearing by the Supreme Court was denied October 18, 1984.

---

[4]Whether the action for adult child support might properly be abated pending the determinations to be made in the conservatorship proceeding or vice versa are questions that may be raised in the respective proceedings by appropriate motions. We express no opinion on such questions because they are not properly before us in this proceeding.