[No. A041680. First Dist., Div. Three. July 28, 1989.]

WESTERN CONTINENTAL OPERATING COMPANY et al., Plaintiffs and Appellants, v.
NATURAL GAS CORPORATION OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Bright & Brown, James S. Bright, Gregory C. Brown, Maureen J. Bright and John Quirk for Plaintiffs and Appellants.

Borton, Petrini & Conron, John F. Petrini and Mark P. Amberg for Defendant and Respondent.

**OPINION**

**MERRILL, J.**—In this appeal, appellants Western Continental Operating Company, Ronald E. Nunn, and Fleet Oil Company (Western), challenge the trial court's order disqualifying a law firm from representing them in the underlying action. We affirm.

## I

Western's first amended complaint against Natural Gas Corporation of California (NGC) and Pacific Gas and Electric (PG&E), alleged causes of action for breach of contract, inducing breach of contract, tortious disavowal of contractual obligations, fraud, civil conspiracy and declaratory relief. Six of the ten causes of action contained allegations pertaining to NGC.

The complaint was served on NGC sometime in late January 1987. Western agreed to three extensions of time in which NGC could respond to the complaint. NGC served Western with its answer to the complaint on November 18, 1987.

On February 11, 1988, NGC moved to disqualify the law firm of Bright & Brown from representing Western. The trial court granted the motion based upon its finding that Bright & Brown had previously represented NGC in a matter substantially related to the instant action.

## II

Appellants are an individual and two independent natural gas producers who had obtained gas exploration and production rights to land near Brentwood in Contra Costa County. NGC is a wholly-owned subsidiary of PG&E,[1] a regulated California public utility. The complaint asserts causes of action based on the contractual obligations of the parties as well as tortious acts related to these contractual obligations. In connection with the five causes of action against both NGC and PG&E, Western has alleged that NGC and PG&E are the alter ego of each other.[2] A sixth cause of action is against NGC alone.

The application of the alter ego doctrine to the instant case is specifically denied by NGC in an affirmative defense to the complaint.

In September 1979, Western and NGC agreed to jointly develop two natural gas units controlled by Western, designated as East Brentwood Gas

---

[1] PG&E is not a party to the instant appeal.

[2] Each cause of action includes the following allegation: "Plaintiffs are informed and believe, and on that basis allege, as follows: (i) that PGandE has dominated and controlled the operation and activities of NGC concerning the matters of which complaint is made herein for its own personal interest and benefit and in disregard of the separate corporate interest and benefit of NGC; (ii) that there exists, and at all times mentioned herein existed, by reason of such domination and control of NGC by PGandE, a unity of interest between PGandE and NGC with respect to the matters of which complaint is made herein such that any individuality and separateness between them have ceased so that, with respect to the matters of which complaint is made herein, NGC is the alter ego of PGandE and vice versa; . . ."

Unit No. 2 (EBU-2), and East Brentwood Gas Unit No. 3 (EBU-3). NGC served as the operator of EBU-2 pursuant to an operating agreement executed by the parties. In its role as operator, NGC was physically responsible for the production of gas and for collecting the revenues due from gas production in the unit. PG&E was designated as purchaser of all gas jointly produced by Western and NGC.

In 1982, a dispute developed with a cotenant of EBU-2, known as the Venada-Prewett group. One-half of the mineral interests in EBU-2 were owned jointly by Western and NGC and the other one-half was owned by the Venada-Prewett group pursuant to a tenancy in common agreement. Venada-Prewett was successfully producing gas from a well on the property and selling it to PG&E. It was the contention of Western and NGC that Venada-Prewett was obliged under California law to pay them one-half of the net proceeds from the well. As operator of EBU-2, it was NGC's responsibility to assert the joint claim of Western and NGC against Venada-Prewett.

As PG&E was the purchaser of the gas being produced by Venada-Prewett, NGC's counsel surmised that the Venada-Prewett controversy might require suing PG&E. Jack Shuck, general counsel for NGC, did not want to represent NGC in a dispute with PG&E, the parent company, so he indicated to Western the desire of NGC to seek outside counsel in this matter. Bright & Brown had previously represented Western on several occasions. In accordance with Western's recommendation, NGC selected Bright & Brown as counsel to represent NGC and Western in the Venada-Prewett matter.

The declaration of Shuck averred that both the controversy with Venada-Prewett and the instant litigation involved EBU-2. The relationship between NGC and PG&E was in dispute in both proceedings. Although an interim settlement was reached in the Venada-Prewett matter, each side reserved the right to assert certain claims against the other. Additionally, NGC's role as operator of the EBU-2, a critical fact in the underlying action, was also at issue in the Venada-Prewett dispute. Bright & Brown, as NGC's counsel, became privy to the manner in which NGC discharged its duties as operator. NGC's duties as operator of EBU-2 were the basis of several causes of action in the complaint eventually filed against it by Western. Western asserted in its complaint that NGC's duties as operator of the EBU-2 unit included protection of Western's rights with respect to third parties.

Shuck also averred that in the course of Bright & Brown's representation of NGC, he disclosed information to James Bright concerning NGC's

internal practices and its relationship with its parent company, PG&E. The disclosures were made with the understanding that they should remain confidential.

In opposition to the motion, James Bright declared that the question of NGC's obligations to Western as operator of EBU-2 was not pertinent to the Venada-Prewett dispute. Nor did the question of NGC's relationship with PG&E arise in connection with the dispute. Also, Bright stated he was informed that NGC and Western both wanted to be kept fully informed of the developments in the resolution of the dispute.

The focus of NGC's disqualification motion was Bright & Brown's former representation of both parties with respect to the Venada-Prewett dispute. NGC maintained that Bright & Brown's prior joint representation precluded its current representation *against* NGC in the underlying action as the two matters were substantially related. Second, NGC submitted that confidential information disclosed to Bright & Brown during its representation of NGC would be used against NGC in the instant action. Finally, NGC asserted disqualification should be ordered as it intended to call one of the partners of Bright & Brown as a witness against Western.

## III

*Substantial relationship test*

The State Bar Rules of Professional Conduct in effect at the time in question prohibited a lawyer from accepting employment adverse to a former client "relating to a matter in reference to which he has obtained confidential information by reason of or in the course of his employment by such . . . former client." (Rules Prof. Conduct, former rule 4-101.) On appeal Western contends Bright & Brown should not have been disqualified as the former representation and the current representation bear no substantial relationship to each other. We disagree.

Preliminarily we note that on appeal from an order granting or denying a disqualification motion, we are obliged to accord deference to the trial court's decision, absent an abuse of discretion. (*Klein* v. *Superior Court* (1988) 198 Cal.App.3d 894, 908 [244 Cal.Rptr. 226], citing *Maruman Integrated Circuits, Inc.* v. *Consortium Co.* (1985) 166 Cal.App.3d 443, 450-451 [212 Cal.Rptr. 497].)

The purpose behind former rule 4-101 is to prevent dishonest conduct as well as to avoid placing the honest practitioner in a position where

he may be forced to choose between conflicting duties or interests. (*Yorn* v. *Superior Court* (1979) 90 Cal.App.3d 669, 675 [153 Cal.Rptr. 295].) The rule seeks to protect the confidential attorney-client relationship. (See *Goldstein* v. *Lees* (1975) 46 Cal.App.3d 614, 619, & fn. 3 (120 Cal.Rptr. 253) [interpreting Rules Prof. Conduct, former rule 5, a forerunner to former rule 4-101].) ■ It is well settled that an attorney is prohibited from doing either of two things after severing a relationship with a former client. "'. . . He may not do anything which will injuriously affect his former client in any manner in which he formerly represented him nor may he at any time use against his former client knowledge or information acquired by virtue of the previous relationship.'" (*People* ex rel. *Deukmejian* v. *Brown* (1981) 29 Cal.3d 150, 155 [172 Cal.Rptr. 478, 624 P.2d 1206]; *Yorn* v. *Superior court, supra,* 90 Cal.App.3d at p. 675.)

■ The initial determination to be made with respect to a disqualification motion is "'whether the former representation is "substantially related" to the current representation.' [Citation.]" (*Global Van Lines, Inc.* v. *Superior Court* (1983) 144 Cal.App.3d 483, 488 [192 Cal.Rptr. 609], fn. omitted; accord *Elliott* v. *McFarland Unified School Dist.* (1985) 165 Cal.App.3d 562, 568 [211 Cal.Rptr. 802].) ■ On the other hand, nothing in the rule prohibits an attorney from accepting employment adverse to a former client if the new matter bears no relationship to the confidential information previously acquired. (*Goldstein* v. *Lees, supra,* 46 Cal.App.3d at p. 619.)

■ Disqualification of an attorney from representing a former client does not require proof of actual possession of confidential information. (*Global Van Lines, Inc.* v. *Superior Court, supra,* 144 Cal.App.3d at p. 489, citing *People* ex rel. *Deukmejian* v. *Brown, supra,* 29 Cal.3d at p. 156; *Trone* v. *Smith* (9th Cir. 1980) 621 F.2d 994, 999; *Yorn* v. *Superior Court, supra,* 90 Cal.App.3d at p. 675; and *Industrial Indem. Co.* v. *Great American Ins. Co.* (1977) 73 Cal.App.3d 529, 535 [140 Cal.Rptr. 806].)

"When a *substantial relationship* has been shown to exist between the former representation and the current representation, and when it appears by virtue of the nature of the former representation or the relationship of the attorney to his former client confidential information material to the current dispute would normally have been imparted to the attorney or to subordinates for whose legal work he was responsible, the attorney's knowledge of confidential information is *presumed*." (*Global Van Lines, Inc.* v. *Superior Court, supra,* 144 Cal.App.3d at p. 489, italics added, citing *People* ex. rel. *Deukmejian* v. *Brown, supra,* 29 Cal.3d at pp. 155-156.) The presumption of knowledge is a "rule by necessity" as the former client would

be at a loss to prove what is in the mind of the attorney. Neither should the attorney be forced to evaluate the extent to which he acquired relevant information and his actual use of that knowledge in the current representation. (*Global Van Lines*, 144 Cal.App.3d at p. 489.). Normally, where a substantial relationship is shown, the inquiry ends and disqualification should be ordered. (*River West, Inc.* v. *Nickel* (1987) 188 Cal.App.3d 1297, 1304 [234 Cal.Rptr. 33].)

In *Global,* the California case which expressly adopted the federal "substantial relationship" test (see *River West, Inc.,* v. *Nickel, supra,* 188 Cal.App.3d at p. 1302), the trial court had denied the defendant's disqualification motion for lack of evidence that plaintiff's attorney obtained confidential information during the previous employment. The defendant was a household goods moving company, and the plaintiff was the defendant's distributing agent in Santa Clara County. The attorney for plaintiff had formerly represented defendant Global as general counsel. The complaint for breach of the parties' agency contract asserted that Global permitted other agents to solicit business in the county. During the attorney's tenure as general counsel the dispute arose which ultimately resulted in the litigation. Additionally, the attorney had been involved in Global's acquisition of the company which the plaintiff now asserted was wrongfully being permitted to solicit business. The complaint contained several allegations that the newly acquired company (UC) was actually Global's alter ego; e.g., that UC was a "conduit" through which Global carried on business, that there was a unity of interest and ownership between Global and UC and that Global owned 90 percent of UC's stock. The Court of Appeal noted that the attorney had gained intimate knowledge of Global's acquisition of UC and thus had knowledge of the alter ego issue. The appellate court issued the writ of mandate as it determined there was a substantial relationship between the attorney's former representation of defendant and the current representation of plaintiff. (*Global Van Lines, Inc.* v. *Superior Court, supra,* 144 Cal.App.3d at pp. 485-489.)

■ The evidence shows that Bright & Brown's former representation of NGC is substantially related to its adverse representation in the underlying action. While the former representation primarily concerned a third-party dispute, in the course of the resolution of such dispute, Bright & Brown gained crucial knowledge of the internal operating practices of NGC. Additionally, Bright & Brown became informed of NGC's purported alter ego status with respect to PG&E, a crucial factual thread which runs through five of the six causes of action against NGC in Western's complaint. One of NGC's affirmative defenses to the complaint refutes the application of the alter ego allegations.

Further, the former representation provided Bright & Brown with the opportunity to acquire information as to NGC's performance of its duties as operator of EBU-2. A substantial relationship between past and current representation is shown here as NGC's alleged breach of its duties as operator of EBU-2 is the subject of at least three causes of action in Western's complaint.

## IV

*Joint client exception*

Western next urges that rule 4-101 contemplates an exception where the attorney jointly represented the parties in the former matter. In such a case, Western argues, no confidentiality privilege exists as to one of the jointly represented clients with respect to information disclosed to the other client. Western submits that during Bright & Brown's joint representation of NGC and Western, each party fully understood that information disclosed by either party should be shared with both parties. In support of its position, Western relies on Evidence Code section 962,[3] setting forth a joint client exception to the evidentiary privilege accorded to attorney-client communications. Additionally, Western relies on two federal cases, *Allegaert* v. *Perot* (2d Cir. 1977) 565 F.2d 246 and *Christensen* v. *U.S. D. Court for Cent. D. of Cal.* (9th Cir. 1988) 844 F.2d 694, which hold that the substantial relationship test is inapposite where the former client has no reasonable expectation that information given to counsel will not be disclosed to the current client.

We are unpersuaded under the circumstances of this case that there is a joint client exception to the prohibition against representation adverse to a former client.

We disagree that the privilege exception or the cases cited have any application here. In the first instance, we are not concerned in this case with discovery of allegedly privileged communications. Instead, the pertinent issue is the propriety of an attorney's representation adverse to a former client. Our courts have distinguished the rule against representing conflicting interests from the attorney-client evidentiary privilege noting

---

[3] Evidence Code section 962 provides: "Where two or more clients have retained or consulted a lawyer upon a matter of common interest, none of them, nor the successor in interest of any of them, may claim a privilege under this article as to a communication made in the course of that relationship when such communication is offered in a civil proceeding between one of such clients (or his successor in interest) and another of such clients (or his successor in interest)."

that the former is broader than the latter. " ' ". . . The evidentiary privilege and the ethical duty not to disclose confidences both arise from the need to encourage clients to disclose all possibly pertinent information to their attorneys, and both protect only the confidential information disclosed. The duty not to represent conflicting interests . . . is an outgrowth of the attorney-client relationship itself, which is confidential, or fiduciary, in a broader sense. Not only do clients at times disclose confidential information to their attorneys; they also repose confidence in them. The privilege is bottomed only on the first of these attributes, the conflicting-interests rule, on both." [Citation.]' " (*San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358, 366, fn. 5 [208 Cal.Rptr. 494, 50 A.L.R.4th 913]; *Industrial Indem. Co.* v. *Great American Ins. Co., supra,* 73 Cal.App.3d at p. 536, fn. 5.)

Moreover, *Allegaert* and *Christensen* are distinguishable from the instant case as the record here reveals the trial court had substantial evidence of NGC's reasonable expectation of confidentiality with respect to certain disclosures. On the one hand, Shuck's declaration in support of the order states that he disclosed information to Bright concerning NGC's alter ego status and internal operating practices which he fully expected would remain confidential. In contrast, Bright's declaration states the alter ego issue and the question of NGC's role as operator of EBU-2 were not implicated in the Venada-Prewett matter. He also states that Western's president, LaPerle, and NGC's general counsel, Shuck, "specifically instructed [him] . . . to keep the Plaintiffs and NGC fully informed with respect to all aspects of the matter."

In attempting to resolve conflicting declarations, it was within the trial court's discretion to adopt Shuck's declaration that the disclosures were made with an expectation of confidentiality. (See *Klein* v. *Superior Court, supra,* 198 Cal.App.3d at p. 913.) In the case at bench a perceptive trial judge recognized the realities of the situation. When there is a question of alter ego, a subsidiary corporation as a client should make a full disclosure to its attorney of all the factors in its relationship to its parent. The client may reasonably expect that certain aspects of this information will be disclosed by its attorney only when and if it becomes significant to the dispute. In determining when confidentiality begins and ends a trial court must be guided by the circumstances of the particular case.

Western's reliance on the recent opinion in *Cornish* v. *Superior Court* (1989) 209 Cal.App.3d 467 [257 Cal.Rptr. 383] is misplaced. The case involved an action by Cornish, a contractor, against a subcontractor's bonding company, among others. Cornish challenged the trial court's denial of a

motion to disqualify the law firm representing the bonding company by petitioning for a writ of mandate. Relying on *Allegaert* v. *Perot, supra,* 565 F.2d 246, the Court of Appeal denied the petition, holding that Cornish had no reasonable expectation in the confidentiality of his communications. The *Cornish* court relied on the fact that the law firm in question never had an attorney-client relationship with Cornish, that Cornish had personal counsel to advise him, and never received advice from the bonding company's law firm and that the purported confidential communications were, in fact, communications between opposing attorneys. (*Cornish,* 209 Cal.App.3d at pp. 475-479.) The holding in *Cornish* is based on the particular facts of that case. As the court noted, "[o]ur conclusion is based on the specific facts present. Our conclusion would be significantly altered if petitioner had not been independently represented by counsel or if there was evidence that petitioner looked to both its personal counsel and [the bonding company's attorney] for advice and counsel." (*Id.,* at p. 478, fn. omitted.)

It is clear that *Cornish* is readily distinguishable from the instant case on its facts. In the first instance Bright & Brown unquestionably had a confidential attorney-client relationship with NGC, during which confidential communications pertinent to the instant action were related. Although NGC's general counsel continued representation, Bright & Brown were the counsel retained by NGC in connection with the Venada-Prewett dispute. In its role as counsel, Bright & Brown advised NGC, who as operator of EBU-2 had the primary responsibility for asserting the joint claim against Venada-Prewett. Unlike *Cornish,* the evidence in the instant case indicates NGC could reasonably expect that certain information given to counsel would remain confidential. *Cornish* is not controlling.

V

█ We also reject Western's further contention that the disqualification motion should have been denied based on NGC's prejudicial delay in bringing the motion.

█ In exercising its discretion with respect to granting or denying a disqualification motion, a trial court may properly consider the possibility that the party brought the motion as a tactical device to delay litigation. (*Klein* v. *Superior Court, supra,* 198 Cal.App.3d at p. 908; *Maruman Integrated Circuits, Inc.* v. *Consortium Co., supra,* 166 Cal.App.3d at pp. 450-451.) Where the party opposing the motion can demonstrate prima facie evidence of unreasonable delay in bringing the motion causing prejudice to the present client, disqualification should not be ordered. The burden then shifts back to the party seeking disqualification to justify the delay. (*River*

---

*West, Inc.* v. *Nickel, supra,* 188 Cal.App.3d at pp. 1309, 1311.) Delay will not necessarily result in the denial of a disqualification motion; the delay and the ensuing prejudice must be extreme. (*River West, Inc., supra,* at p. 1311.)

■■■ The record shows NGC was served with the complaint in this action in January 1987. NGC's answer was served upon Western on November 18, 1987. The declarations show that prior to the filing of the disqualification motion, in December 1987, NGC attempted on three occasions to procure Bright & Brown's voluntary withdrawal as Western's counsel in the litigation. Pursuant to James Bright's request, in early January 1988, NGC's counsel provided Western with a written statement of reasons for its disqualification motion in the form of its proposed motion. NGC served Western with its notice of motion and motion to disqualify in late January 1988.

Western asserts that Shuck, as NGC general counsel during the Venada-Prewett matter and at all pertinent times since, had knowledge of the conflict from early on. Moreover, Western asserts that Shuck had the opportunity to present his objection to Bright & Brown's representation even during the course of lengthy negotiations prior to the filing of the complaint. NGC explains, through Shuck's declaration, the conflicting prior representation issue was not fully considered until outside defense counsel was retained for Western's action. According to the declaration, the conflict issue was not discovered until December 1, 1987, when NGC's counsel was reviewing documents in the case in connection with discovery requests. NGC's counsel made the first attempt to obtain Bright & Brown's withdrawal on December 3, 1987.

From the time NGC filed its answer until the time it filed its disqualification motion, little more than two months elapsed. During that time NGC appears to have made a good faith effort at negotiating a voluntary withdrawal and avoiding the necessity of filing a motion. Additionally, the 11-month lapse of time between the filing of the complaint and NGC's attempt to gain a voluntary withdrawal was adequately explained by Shuck's declaration. In short, the delay was not extreme or unreasonable in this action. This complex case was still in its early stages at the time NGC filed its motion.

## VI

In view of our determination that substantial evidence supports the trial court's disqualification based on a substantial relationship between former

and current representation, and that the joint client exception does not apply, we do not reach the issue of the propriety of disqualification based on the fact that Bright would be called as a witness in the underlying litigation. The judgment is affirmed.

White, P. J., and Barry-Deal, J., concurred.