NEWMAN, Circuit Judge,
dissenting.
It is not disputed that as Director of Patents and Licensing and in-house counsel to AMD, Kent Cooper was a member of AMD’s litigation team when Nintendo and AMD entered into an agreement to exchange vital confidential information, and pursue a common defense against the Lonestar Corporation in a patent infringement suit involving the same accused graphics processing chip at issue here.
Nor is it disputed that after Cooper joined the law firm of Floyd and Buss, the firm was and is representing parties adverse to Nintendo. The firm did not take any steps to exclude Cooper from the firm’s activities in this lawsuit; there is no representation that the traditional “firewall” was erected. While Cooper states that he does not remember receiving Nintendo’s confidential information, even his co-counsel at AMD states that Cooper was privy to litigation tactics and strategies that are likely relevant in this substantially-related case. Whether or not Cooper drew upon his insider’s information in past interaction with Nintendo, it cannot be presumed that this did not occur. See generally In re Am. Airlines, 972 F.2d 605, 614, n. 1 (5th Cir.1992).
The issue is not simply whether Nintendo’s information may be used against itself during this litigation; the issue is the integrity of the system of legal representation in today’s world of mobile lawyers *1343 and large law firms with interacting clients. Thus the system of firewalls has been accepted for many situations. Here, however, it appears that Cooper in his new employment is associated with issues involving his former employer, and that his former employment was at the highest level in interaction with Nintendo’s legal and strategic interests. If there is doubt, it must be resolved in favor of the entity whose information is in jeopardy.
The district court applied these routine precepts, and excluded Cooper and his new firm from this litigation, for the possible threat posed to Nintendo is not tolerated under the laws of California or the rules of professional conduct. It is well established that a disqualification is proper when an attorney has received information in his role as an attorney, even if the source of the information is not a “client” of the attorney. See Oaks Management Corp. v. Superior Court, 145 Cal.App.4th 453, 464, 51 Cal.Rptr.3d 561 (2006); Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft, 69 Cal.App.4th 223, 232-33, 81 Cal.Rptr.2d 425 (1999) (“an attorney’s receipt of confidential information from a non-client may lead to the attorney’s disqualification”); see also United States v. Henke, 222 F.3d 633, 637 (9th Cir.2000) (a joint defense agreement can create a disqualifying conflict where information gained in confidence by an attorney becomes an issue).
The California courts have accepted the presumption of receipt of confidential information, to protect not only the holder of the information but also the attorney, ensuring that the attorney does not need to “engage in a subtle evaluation of the extent to which he acquired relevant information in the first representation and of the actual use of that knowledge and information in the subsequent representation.” Global Van Lines, Inc. v. Superior Court, 144 Cal.App.3d 483, 489, 192 Cal.Rptr. 609 (1983). Cooper’s disqualifying conflict thus warranted his disqualification and, in the district court’s discretion, the disqualification of the law firm that represents the adverse interests. The integrity of the legal process demands no less.
My colleagues on this panel, however, hold that Nintendo waived this conflict, from their reading of the following paragraph in the Agreement:
Nothing contained in this Agreement has the effect of transforming outside or inside counsel for either party into counsel for the other party, or of creating any fiduciary or other express or implied duties between a party or its respective counsel and the other party or its respective counsel, other than the obligation to comply with the express terms of this Agreement, or of interfering with each lawyer’s obligation to ethically and properly represent his or her own client. The parties expressly acknowledge and agree that nothing in this Agreement, nor compliance with the terms of this Agreement by either party, shall be used as a basis to seek to disqualify the respective counsel of such party in any future litigation.
While the majority finds this statement to be “clear and indisputable” evidence of a waiver as to Cooper and his new law firm, it is neither clear nor indisputable. According to my colleagues’ understanding, Nintendo disclosed confidential information with the knowledge that Cooper might leave AMD and use that information to Nintendo’s disadvantage, and waived all right to object to such adverse activity. Such a waiver would be remarkable, and cannot be presumed.
There is no carve-out provision from the conditions of confidentiality that would allow an attorney to represent another party against Nintendo or AMD in a future ac *1344 tion. The Agreement’s waiver provision, while attempting to avert disputes, does not authorize future adverse representation. The majority extracts text from several different parts of the paragraph, to support its result. However, the standard that SMG must meet is that Nintendo’s waiver clearly met this clear-cut conflict situation. That standard has not been met.
The district court, applying California law and practice, found that any waiver did not apply to the situation presented by Cooper and his new association. In addition to its rejection of Nintendo’s interpretive arguments, the district court stated that the parties had failed to present any “evidence to suggest that the waiver contemplated covering attorneys who left their respective companies for new clients.” Shared Memory Graphics LLC v. Apple, Inc., No. 10-CV-2475, slip op. at 6 (N.D.Cal. Dec. 17, 2010).
The majority of this panel, in considering this court’s mandamus authority in local disqualification matters, overlooks the most important: that even in the face of irreparable harm, the district court’s reasonable conclusion is within that court’s discretion. The Ninth Circuit, whose law we apply here, has made clear “that a district court has the prime responsibility for controlling the conduct of lawyers practicing before it, and that an order disqualifying counsel will not be disturbed if the record reveals ‘any sound’ basis for the district court’s action.” In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation, 658 F.2d 1355, 1358 (9th Cir.1981) (citing Gas-A-Tron of Arizona v. Union Oil Co. of California, 534 F.2d 1322, 1325 (9th Cir.1976)).
Our task is to ensure that the district court’s decision was not a “clear abuse of discretion or ‘usurpation of judicial power.’ ” Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 382, 74 S.Ct. 145, 98 L.Ed. 106 (1953) (citation omitted). That standard cannot be met where, as here, there is plausible support for the district court’s ruling. See In re Cordis Corp., 769 F.2d 733, 737 (Fed.Cir.1985) (noting that “if a rational and substantial legal argument can be made in support of the rule in question, the case is not appropriate for mandamus.”).
Despite my colleagues’ unwillingness to recognize that disqualification is proper based on breach of the lawyer’s professional obligations, in a footnote this court apparently acknowledges that Cooper and his law firm could be disqualified if they are found to breach the Agreement. However, professional responsibility in the legal system does not distinguish between a written agreement to protect information received as an attorney, and the ethical obligation to protect information received as an attorney. The possible adverse use of such information, flowing from a change in the lawyer’s employment, is prohibited under any theory. The district court so recognized.
The district court’s decision to disqualify Cooper and his law firm was not an abuse of the trial judge’s discretion. This court has inappropriately intruded into the district court’s authority and responsibility, to the detriment of the integrity of legal practice. I respectfully dissent.