[No. S014386. Dec. 24, 1990.]

GERALD KING, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Gerald King, in pro. per., and Walter H. King for Petitioner.

Diane C. Yu, Richard J. Zanassi, Ann M. Finneran, Gael T. Infande and Teresa Schmid for Respondent.

OPINION

**THE COURT.**—We review the recommendation of the Review Department of the State Bar Court of the State of California (review department) that Gerald King (King) be suspended from the practice of law for a period of four years; that execution of suspension be stayed; and that King be placed on probation for the period subject to certain conditions, including a three-month actual suspension. We agree with the review department that King willfully and repeatedly failed to perform competently the legal services for which he was employed, failed to return client files, and violated his oath and duties as an attorney. Consequently, we adopt the disciplinary recommendation of the review department.

FACTS

King was admitted to the practice of law in California on June 21, 1966, and has been a member of the State Bar since that date.

The review department adopted the hearing panel's findings of fact. The review department's recommendation is based on two matters involving professional misconduct by King.

A. *The Jalbert Matter*

Albert Jalbert was injured during a head-on automobile collision. On September 4, 1980, he hired King to represent him in a personal injury action. On July 13, 1981, King filed an action on Jalbert's behalf in the Los Angeles Superior Court.

King failed to serve the complaint and summons upon the defendants. As a result, on March 5, 1986, the court dismissed the action. During the five-year period from the filing of the complaint to the dismissal, King did not initiate any discovery or file any papers with the court to move the case forward. King did not even obtain his own witnesses' records; Jalbert had to collect the records.

Moreover, Jalbert, concerned about the case, called King from one to four times a month for a status report. From July 1982 onward, Jalbert began to drop in monthly at King's office to check on the case's progress. During these phone calls and visits, King would assure Jalbert that the case was proceeding to trial. In July 1983, at one of these visits, King told Jalbert that he had received a $15,000 settlement offer. Upon King's strong recommendation, Jalbert rejected the offer.

In July 1985, Mrs. Jalbert, concerned about the lack of progress in her husband's case, went to the courthouse to review the file. The clerk informed her that no action had been taken on the case since 1981 and, as a result, the statute of limitations had run.[1] When the Jalberts called King with this information, he took no immediate action. Instead, King told the Jalberts to come back in December. In December 1985, King told the Jalberts that he had lost their case and they could sue him.

Shortly thereafter, Jalbert retained other counsel and requested that King deliver his files to the new counsel. King failed to deliver the files and Jalbert had to duplicate the files himself, i.e., copy his doctor's records, at his own expense. Jalbert sued King for malpractice and, in November 1986, obtained a default judgment for approximately $84,000. King has never paid or offered to pay to Jalbert any part of the $84,000 judgment.

## B. *The Jenison Matter*

In early June 1980, Beverly Jenison hired King to represent her in the probate of her ex-husband's estate, and a petition for guardianship concerning her two minor children. Originally (in 1978), Jenison hired another attorney to set up the probate and guardianship proceedings. When that attorney failed to close probate after two years, Jenison substituted in King on the matter.

Although Jenison called King numerous times from June 1980 until February 1983 to inquire about the probate's progress, King failed to close probate.[2] King did not answer many of Jenison's calls. When Jenison did reach King, he blamed the lack of progress on an inheritance tax problem. However, when the inheritance tax referee requested documents, King never sent them, nor did he take any other significant action to close probate.

Frustrated with King's inaction, Jenison retained new counsel. The new attorney repeatedly requested that King deliver the Jenison files to him. King failed to return the files until January 1984—over seven months after Jenison substituted attorneys. King only delivered the files when Jenison sent a friend to King's office to demand the files.

## C. *Evidence in Mitigation and Aggravation*

In mitigation, the hearing panel noted that since 1966, King did not have any prior discipline. King testified that during the five years of his miscon-

---

[1] Technically, the court clerk was incorrect. King had missed the three-year period for mandatory service of the summons and complaint, pursuant to Code of Civil Procedure section 583.210, not the statute of limitations.

[2] King testified that the guardianship proceedings were completed by the time he took over the matter.

duct he had financial difficulties that precipitated his problems.[3] Partially due to his divorce, King was also depressed.

The hearing panel also noted that King was forthright with Jalbert about his malpractice. King told Jalbert that he had cause for a malpractice action and suggested that Jalbert could pursue it through another attorney. King allowed Jalbert to take a $84,000 default judgment against him.

Evidence in aggravation in the Jalbert matter included the fact that Jalbert suffered a serious financial loss because of King's error. The extent of the loss is reflected in the amount of the default judgment—$84,000. Although King allowed Jalbert to obtain a default judgment, King has failed to pay the judgment.

As evidenced by his testimony, and his failure to make any effort toward restitution, King fails to appreciate either the severity of his misconduct or the hardship Jalbert suffered by not being reimbursed for his injuries. King testified that he did not offer restitution because Jalbert's financial loss is "comparatively small." Moreover, King explained, "Mr. Jalbert is not in financial need in terms of having to worry about his roof over his head, food that he eats and his other necessities of . . . life."

While Jenison did not suffer financial loss, the hearing panel concluded that she suffered the emotional distress caused by King's three-year delay in closing probate.

In both the Jalbert and the Jenison matters, King failed to return the client files, although he was repeatedly requested to do so by his former clients and their new counsel.

## D.   *Recommendation of the State Bar*

The hearing panel found in both the Jalbert and Jenison matters that King had willfully and repeatedly failed to perform competently the legal services for which he was employed, failed to return client files, and violated his oath and duties as an attorney. The hearing panel found that such acts violated Business and Professions Code sections 6068, subdivision (a) (duty of an attorney to support the Constitution and laws of the United States and of this state) and 6103 (disobedience of a court order; violation of an attorney's oath or duties) and Rules of Professional Conduct, former rules 2-111(A)(2), 6-101(A)(2), and 6-101(2).[4] The hearing panel recommended

---

[3] King testified that his precarious financial condition, which precipitated his lax behavior, continues to exist.

[4] All references to rules are to the State Bar Rules of Professional Conduct unless otherwise indicated. The conduct at issue in this case took place in the years 1980 through 1986. This

that King be suspended from the practice of law for a period of four years; that execution of suspension be stayed; and that King be placed on probation for the period subject to certain conditions, including a three-month actual suspension.

The review department, by a vote of 13-1, adopted the decision of the hearing panel. However, the review department deleted the hearing panel's probation condition requiring King to make restitution to Jalbert in the amount of $84,000. (The sole dissenting member supported the majority's recommendation, but, like the hearing panel, would have required restitution.)

## DISCUSSION

■ In reviewing the findings of the review department, we must exercise our independent judgment to determine whether the facts and circumstances of King's case justify the discipline recommended. (*In re Ford* (1988) 44 Cal.3d 810, 815 [244 Cal.Rptr. 476, 749 P.2d 1331]; *In re Vaughn* (1985) 38 Cal.3d 614, 618 [213 Cal.Rptr. 583, 698 P.2d 651].) However, the review department's recommendation is entitled to great weight. (*Slavkin* v. *State Bar* (1989) 49 Cal.3d 894, 904 [264 Cal.Rptr. 131, 782 P.2d 270]; *In re Lamb* (1989) 49 Cal.3d 239, 245 [260 Cal.Rptr. 856, 776 P.2d 765].) King bears the burden of showing that the review department's findings are not supported by the evidence or that its recommendation as to the appropriate degree of discipline is erroneous or unlawful. (*In re Ford, supra*, 44 Cal.3d at pp. 815-816.) King must demonstrate that the charges of unprofessional conduct are not sustained by convincing proof and to a reasonable certainty. (*Kapelus* v. *State Bar* (1987) 44 Cal.3d 179, 184 [242 Cal.Rptr. 196, 745 P.2d 917].)

■ In the Jalbert and Jenison matters, the review department concluded that King had committed willful violations of Business and Professions

period was before the present State Bar Rules of Professional Conduct took effect on May 27, 1989. References to former rules are to those in effect when petitioner's conduct occurred.

Former rule 2-111(A)(2) provided, "[A] member of the State Bar shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules."

Effective January 1, 1975, former rule 6-101(2) provided, "A member of the State Bar shall not wilfully or habitually [¶] (2) Fail to use reasonable diligence and his best judgment in the exercise of his skill and in the application of his learning in an effort to accomplish, with reasonable speed, the purpose for which he is employed."

Amendments effective on October 21, 1983, revised former rule 6-101 to provide in pertinent part, "A member of the State Bar shall not intentionally or with reckless disregard or repeatedly fail to perform legal services competently." (Former rule 6-101(A)(2).)

The substance of these former rules now appears in rules 3-700(A)(2), (D)(1), and 3-110.

Code section 6103.[5] As we held in *Baker* v. *State Bar* (1989) 49 Cal.3d 804 [263 Cal.Rptr. 798, 781 P.2d 1344], "[s]ince this section does not define a duty or obligation of an attorney, but provides only that violation of his oath or duties defined elsewhere is a ground for discipline, petitioner did not violate this section." (*Id.* at p. 815.)

In reviewing the evidence, we conclude that King's misconduct in the Jalbert and Jenison matters is a serious breach of his duty as an attorney and warrants an actual suspension. In the Jalbert matter, King stipulated that (1) as a result of his failure to serve the complaint and summons within the time limits, the court dismissed the complaint upon the defendants' motion; (2) despite repeated requests, King failed to deliver Jalbert's file to Jalbert's new attorney; and (3) Jalbert obtained an $84,000 default judgment against him, which King has never paid.

In addition, during the period from 1980 to 1985, Jalbert repeatedly called King and often visited King's office to check on the status of his case. Despite Jalbert's numerous reminders, King took no action. Similarly, in the Jenison matter, King knew that Jenison hired him because she was upset with her previous attorney for failing to probate a simple will in a three-year period. Yet, King proceeded to sit on the matter for an additional three years. Again, King ignored repeated requests by his client to act. When Mrs. Jenison terminated King's representation, he failed to return the files until seven months later.

King challenges the hearing panel's findings contending that the evidence does not support the findings that he acted "willfully." For instance, he claims his failure to effect service of a complaint was an "inadvertent failure." He further claims that the failure to file was "an error that happens to a practicing attorney on rare occasions, but certainly not of his own choosing, of his own will and not on purpose."

In *Durbin* v. *State Bar* (1979) 23 Cal.3d 461 [152 Cal.Rptr. 749, 590 P.2d 876], we considered the meaning of "willfulness" in the context of California Rules of Court, rule 955. In that case we rejected a contention that bad faith was a necessary element of "willfulness." We concluded that "[o]nly a general purpose or willingness to commit the act or permit the omission is necessary." (23 Cal.3d at p. 467.) "We have also held in other contexts that to establish a willful breach of the Rules of Professional Conduct, '[I]t must be demonstrated that the person charged acted or omitted to act purposely,

---

[5] Section 6103 provides: "A wilful disobedience or violation of an order of the court requiring him to do or forbear an act connected with or in the course of his profession, which he ought in good faith to do or forbear, and any violation of the oath taken by him, or of his duties as such attorney, constitute causes for disbarment or suspension."

that is, that he knew what he was doing or not doing and that he intended either to commit the act or to abstain from committing it.' (*Zitney* v. *State Bar* (1966) 64 Cal.2d 787, 792 [51 Cal.Rptr. 825, 415 P.2d 521]; see also *Abeles* v. *State Bar* (1973) 9 Cal.3d 603, 610-611 [108 Cal.Rptr. 359, 510 P.2d 719]; *Millsberg* v. *State Bar* (1971) 6 Cal.3d 65, 74 [98 Cal.Rptr. 223, 490 P.2d 543].) Willfulness of an act is thus not necessarily dependent upon knowledge of the provision which is violated. (*Gassman* v. *State Bar* (1976) 18 Cal.3d 125, 131 [132 Cal.Rptr. 675, 553 P.2d 1147]; *Silver* v. *State Bar* (1974) 13 Cal.3d 134, 145 [117 Cal.Rptr. 821, 528 P.2d 1157].) There is no doubt petitioner's noncompliance was willful under established standards." (*Hamilton* v. *State Bar* (1979) 23 Cal.3d 868, 873-874 [153 Cal.Rptr. 602, 591 P.2d 1254].)

Under circumstances similar to this case we have found that a failure to file a complaint is willful. In *Arden* v. *State Bar* (1987) 43 Cal.3d 713 [239 Cal.Rptr. 68, 739 P.2d 1236, 79 A.L.R.4th 559], an attorney filed a lawsuit on behalf of an injured client. As in the present case, the attorney failed to serve the action on any defendant or take any other action on the client's behalf. After repeated attempts to contact Arden failed, the client retained new counsel. Arden failed to turn over the case file. Eventually, the case was dismissed for failure to prosecute and the client obtained a malpractice judgment against Arden which Arden never paid.

Arden, like King, argued his neglect of his clients' cases was not willful and thus did not violate former rule 6-101. We dismissed Arden's argument. "Petitioner's failure for three years to cause the action to be served on any defendant involved a conscious disregard of the requirements of reasonable diligence and good judgment and cannot be said to have resulted from mere inadvertence or mistake. The record shows petitioner did virtually nothing to advance his client's cause despite receiving numerous reminders the matter was pending and required attention." (*Arden* v. *State Bar, supra,* 43 Cal.3d at p. 726.)

Clearly King's interpretation of the meaning of the term "willful" is erroneous. King's self-serving statements evidence a failure to appreciate the seriousness of his actions. His description of what transpired conveniently makes him out to be as much a victim as his client. (King, in explaining his failure to file the complaint on time, states, "There is no conceivable reason for not effecting such filing. It was clearly to the detriment of Petitioner [King].") King fails to take responsibility for his omissions to act by claiming that only a "purposeful" failure to attend to client matters would justify his discipline.

King also argues that but for the fact that he did not have a policy of errors and omissions insurance, he would, in all probability, not be subject

to disciplinary proceedings. King contends that he was unable to afford insurance and was financially unable to compensate his client. King's assertion again reflects an inability to understand the seriousness of his actions and a continued refusal to take responsibility for his neglect of his clients. We do not discipline King for his failure to carry insurance. We discipline King for his carelessness and neglect of his clients. King's inability to afford insurance does not excuse his violations of his oath and duties. Such a holding would lead to the absurd result that attorneys who did not have insurance would be held to lower standards than those who did.

## DISPOSITION

King has not met his burden of proving that the review department's recommended discipline is excessive. The review department's recommendation, a four-year suspension, stayed upon conditions that include a three-month actual suspension, is consistent with the Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V) and is supported by the record.

The primary purposes of sanctions imposed for professional misconduct are the protection of the public, the courts, and the legal profession; the maintenance of high professional standards by its members; and the preservation of public trust in the legal profession. (Rules Proc. of State Bar, div. V, Stds. for Atty. Sanctions for Prof. Misconduct, std. 1.3; all further references to standards are to these provisions.) Based on this standard, we agree that the review department's recommended discipline is appropriate in this case.

The record shows that King, in two matters, neglected client matters even though the clients in both cases had urged him to act. King's willful neglect seriously injured one client (Jalbert), as evidenced by the $84,000 uncollected malpractice judgment. The financial problems that contributed to King's conduct continue to exist. There is no evidence that King now has insurance or that he has accepted responsibility for his own actions. Therefore, King's continued practice of law still jeopardizes the public and a period of actual suspension is necessary to protect the public.

King's misconduct violated Business and Professions Code section 6068, subdivision (a) and former rules 2-111(A)(2), 6-101(A)(2), and 6-101(2). Standard 2.4(b) states, "culpability of a member of wilfully failing to perform services in an individual matter or matters not demonstrating a pattern of misconduct or culpability of a member of wilfully failing to communicate with a client shall result in reproval or suspension depending upon the extent of the misconduct and the degree of harm to the client."

Standard 2.6 states that the culpability of a member of a violation of Business and Professions Code section 6068 shall result in disbarment or suspension depending on the gravity of the offense or the harm to the victim with due regard to the purposes of imposing discipline.

For the above reasons, it is ordered that Gerald King be suspended from the practice of law for a period of four years; that execution of suspension be stayed; and that King be placed on probation for the period subject to the conditions adopted by the review department, including that King be actually suspended from the practice of law for the first three months of the probationary period.

King is also ordered to take and pass the Professional Responsibility Examination given by the National Conference of Bar Examiners within one year of the effective date of the order of this court (*Segretti* v. *State Bar* (1976) 15 Cal.3d 878 [126 Cal.Rptr. 793, 544 P.2d 929]) and furnish satisfactory proof thereof to the Los Angeles Office of the State Bar Court, Department of Probation, within that year.

It is also ordered that King comply with the provisions of rule 955 of the California Rules of Court, and specifically paragraphs (a) and (c) thereof within 30 days and 40 days, respectively, of the effective date of the order of this court.

This order is effective upon the finality of this decision in this court. (See Cal. Rules of Court, rule 953(a).)