[No. S015185. Feb. 21, 1991.]

ROBERT PAUL DUDUGJIAN, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

THOMAS MACK HOLLIDAY, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Tom Low for Petitioners.

Diane C. Yu, Richard J. Zanassi, Lawrence C. Yee and Gregory B. Sloan for Respondent.

## OPINION

**THE COURT.**—In these consolidated proceedings under section 6083, subdivision (a), of the Business and Professions Code and rule 952(a) of the California Rules of Court, we review the decision of the State Bar recommending that petitioners Robert Paul Dudugjian and Thomas Mack Holliday (hereafter sometimes petitioners) be disciplined for a single instance of professional misconduct involving the handling and retaining of client funds.[1]

A panel of the Hearing Department of the State Bar Court (hereafter the hearing panel or panel) recommended that petitioners be publicly reproved on condition of restitution and the successful taking of the Professional Responsibility Examination.

The Review Department of the State Bar Court (hereafter the review department) recommended that Dudugjian be suspended from the practice of law for two years, that his suspension be stayed, and that he be placed on probation for two years on conditions including actual suspension for ninety days and joint restitution with Holliday. It also recommended that Holliday be suspended for one year, that his suspension be stayed, and that he be placed on probation for one year on conditions including actual suspension for thirty days and joint restitution with Dudugjian.

As we shall explain, we conclude that the appropriate discipline for petitioners is public reproval as recommended by the hearing panel.

### I. PROCEEDINGS BEFORE THE STATE BAR COURT

Petitioners were both admitted to the practice of law in this state on December 22, 1976, as members of the State Bar.

The Office of Trial Counsel of the State Bar (hereafter the Office of Trial Counsel) filed in the Hearing Department of the State Bar Court a

---

[1] New Rules of Professional Conduct became effective May 27, 1989, and Transitional Rules of Procedure of the State Bar became effective September 1, 1989. Unless otherwise indicated, all citations to "Rules of Professional Conduct" and "Rules of Procedure of the State Bar" refer to the former rules, effective January 1, 1975, and December 17, 1927, respectively, as they were in effect at the times relevant herein.

consolidated notice to show cause charging petitioners with a single count of professional misconduct involving William and Janet Collins. The notice alleged violations of Business and Professions Code sections 6068, subdivision (a), 6103, and 6106, and Rules of Professional Conduct, former rule 8-101 (hereafter rule 8-101), and specifically rules 8-101(A) and 8-101(B)(4). Petitioners filed an answer denying the allegations.

A hearing was held before a panel consisting of a single compensated referee. Both the examiner for the Office of Trial Counsel and counsel for petitioners introduced testimonial and documentary evidence. Witnesses for the Office of Trial Counsel included petitioners and the Collinses; witnesses for petitioners included petitioners themselves.

The hearing panel subsequently filed its decision. It made findings of fact and conclusions of law, and recommended discipline consisting of public reproval on condition of restitution and successful taking of the Professional Responsibility Examination. Its determinations reveal that it substantially adopted Dudugjian and Holliday's version of the facts over the Collinses' version, and that it did so, in large part, as a result of an assessment of the credibility of the witnesses. Read in light of the record, the panel's findings and conclusions are in substance as follows.

In 1978 Dudugjian was retained by William and Janet Collins to represent them in a dispute about real property. In 1981 he filed a complaint on their behalf against defendants including the Star Harbor Association (hereafter the association). In 1983 he entered into a partnership with Holliday and thereby formed the law firm of Holliday & Dudugjian.

Around March 16, 1984, as trial in the real property action loomed, Holliday and William Collins discussed the attorneys' earned and expected fees and the clients' ability to pay. At that time, the Collinses had certain funds held in escrow by the association's attorneys and looked to their return. After the discussion, Dudugjian and Holliday honestly—but mistakenly—believed that the Collinses had given them permission to retain those funds, if and when returned, and apply them to any outstanding bill. Holliday testified, inter alia, that William Collins stated that "those funds . . . would be given to us for fees that would be owing, if any, at the time that those funds were received," and that "when those funds became available they could be applied to fees owing our office, if any." William Collins admitted he might well have spoken words to that effect, but denied he had intended to give permission. Collins's statements were ambiguous in this regard.

Around March 27 Dudugjian and Holliday partially settled the real property action when the association agreed to return to the Collinses the

sum of $5,356.94 from the funds held in escrow. By this time, relations between the attorneys and their clients had begun to deteriorate. Soon after the events relevant here, the firm would formally withdraw and Attorney Dennis Tonsing would take its place.

Around April 16 Holliday & Dudugjian received a settlement check for $5,356.94 payable to the Collinses, and so informed the latter. As of that date, the Collinses owed more than that amount in fees. Pending resolution of any questions about fees, Dudugjian placed the check in a desk drawer. William Collins was advised by Attorney Tonsing not "to worry about" "the bill from Holliday & Dudugjian and the payment due to you from the association" for the time being; Collins evidently followed the advice.

Around May 1, believing there were no unresolved questions about fees, Dudugjian deposited the check into the firm's general account without the Collinses' endorsement. Holliday was vicariously liable for Dudugjian's conduct as a member of the firm. Shortly thereafter, William Collins requested the funds, directly and through Attorney Tonsing. Dudugjian and Holliday evidently believed the Collinses were attempting to take back what they had already given. While waiting for the check to clear, the attorneys falsely represented that they would comply with the request.

On May 14, without express authorization, Holliday & Dudugjian formally applied the funds to the Collinses' outstanding bill and so informed the latter. The Collinses, however, were entitled to the funds. They never received the money.

By acting as they did, the hearing panel concluded, Dudugjian and Holliday violated rule 8-101. Specifically, in depositing the Collinses' settlement check into their general account instead of a client trust account, they violated rule 8-101(A): "All funds received or held for the benefit of clients by a member of the State Bar or firm of which he is a member . . . shall be deposited in one or more identifiable bank accounts labelled 'Trust Account', 'Client's Funds Account' or words of similar import, . . . and no funds belonging to the member of the State Bar or firm of which he is a member shall be deposited therein or otherwise commingled therewith . . . ." Also, in refusing to deliver the funds to the Collinses on their request, they violated rule 8-101(B)(4): "A member of the State Bar shall" "[p]romptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the member of the State Bar which the client is entitled to receive."

Dudugjian and Holliday, the hearing panel determined, did not commit any of the other violations alleged in the notice to show cause. Specifically,

their conduct did not amount to wilful misappropriation, nor did it involve "moral turpitude, dishonesty or corruption" within the meaning of Business and Professions Code section 6106.

In mitigation, the hearing panel concluded, neither Dudugjian nor Holliday had a prior record of discipline or criminal activity. Further, the present misconduct had a relatively minor relationship to their ability to practice law properly. They showed by clear and convincing evidence that they had not engaged in similar misconduct in the past and that, as noted, they had honestly believed that the Collinses had given them permission to retain the settlement funds. They also showed by clear and convincing evidence that the present misconduct was completely out of character and, as such, was not likely to recur. Finally, they submitted convincing character reference letters from several persons, all of whom were aware of the present misconduct, demonstrating that they were of good moral character. There was no clear and convincing evidence in aggravation.

In view of the foregoing, and especially the presence of mitigation and the absence of aggravation, the hearing panel determined that the appropriate discipline was public reproval on condition of restitution and the successful taking of the Professional Responsibility Examination. It acknowledged standard 2.2(b) of the Standards for Attorney Sanctions for Professional Misconduct, Rules of Procedure of the State Bar, division V (hereafter standard 2.2(b)): "Culpability of a member of commingling of entrusted funds or property with personal property or the commission of another violation of rule 8-101, Rules of Professional Conduct, none of which offenses result[s] in the wilful misappropriation of entrusted funds or property[,] shall result in at least a three month actual suspension from the practice of law, irrespective of mitigating circumstances." But it stated that "it clearly and convincingly appears that the imposition of a three-month actual suspension prescribed under Standard 2.2(b) is completely unwarranted under the circumstances in this case, and that a lesser level of discipline should accordingly be imposed."

The Office of Trial Counsel filed a request for review of the hearing panel's decision.

The review department convened and subsequently filed its decision. By unanimous vote, the review department modified the hearing panel's findings of fact and conclusions of law on one point pertinent here, and adopted the findings and conclusions as so modified. As noted, the panel had found Holliday vicariously liable for Dudugjian's deposit of the settlement check. The review department set aside that determination. It found Holliday personally liable: he agreed to the deposit with knowledge of the

relevant circumstances, and thereby affirmatively adopted and ratified Dudugjian's act.

By a vote of eleven to four, the review department recommended, inter alia, that Dudugjian should be suspended for two years, that his suspension should be stayed, and that he should be placed on probation for two years on conditions including actual suspension for ninety days and joint restitution with Holliday. It stated that its recommendation was greater than the hearing panel's because Dudugjian's violation of rule 8-101 was "wilful" and as such required a sanction more severe than public reproval. In support, it cited standard 2.2(b), quoted above, which purports to mandate actual suspension for at least 90 days. Of the review department's four dissenting members, two would have recommended suspension for one year, stayed, with probation for one year on conditions including actual suspension for thirty days; one found the discipline recommended "excessive"; and one simply voted "No."

Further, by a vote of twelve to three the review department recommended, inter alia, that Holliday should be suspended for one year, that his suspension should be stayed, and that he should be placed on probation for one year on conditions including actual suspension for thirty days and joint restitution with Dudugjian. It stated that its recommendation was greater than the hearing panel's because it found that Holliday was personally liable for Dudugjian's deposit of the settlement check. Of the review department's three dissenting members, two found the discipline recommended "insufficient," and one found it "excessive."

Thereafter, petitioners filed a petition for writ of review in this court. They claimed that culpability had not been established, and that in any event discipline more severe than public reproval was not warranted. We ordered the writ to issue.

## II.   PROCEEDINGS ON REVIEW

■ "In disciplinary matters we independently examine the record in its entirety, weigh the evidence, and determine the appropriate discipline to be imposed. [Citations.] Accordingly, we are bound neither by the findings of fact of the State Bar [citation], nor by its conclusions of law [citation], nor by its recommendation as to discipline [citation]. Nevertheless, 'the burden is upon the petitioner to show wherein the decision or action [of the State Bar] is erroneous or unlawful.' [Citation.] 'Our principal concern is always the protection of the public, the preservation of confidence in the legal profession, and the maintenance of the highest possible professional

standard for attorneys.'" (*Sands* v. *State Bar* (1989) 49 Cal.3d 919, 928 [264 Cal.Rptr. 354, 782 P.2d 595].)

Petitioners contend that the decision of the review department is erroneous.

■ They first claim that the determination of culpability as to rule 8-101, and specifically rules 8-101(A) and 8-101(B)(4), is unsound. We disagree.

Of course, culpability "must be established by convincing proof to a reasonable certainty . . . ." (*Price* v. *State Bar* (1982) 30 Cal.3d 537, 547 [179 Cal.Rptr. 914, 638 P.2d 1311]; see, e.g., *Farnham* v. *State Bar* (1988) 47 Cal.3d 429, 436 [253 Cal.Rptr. 249, 763 P.2d 1339].) It is so established here. Having independently reviewed the record in its entirety, we find more than sufficient support for the determination that petitioners violated rule 8-101.

At bottom, petitioners attack the crucial finding that the Collinses had not given them permission to retain the settlement funds. The Collinses testified that they had not in fact given permission. The hearing panel evidently considered them worthy of credit in this regard. Credibility determinations by the panel are entitled to great weight. (*Sands* v. *State Bar*, *supra*, 49 Cal.3d at p. 929.) Although in other particulars the Collinses' testimony is certainly not proof against challenge, there is no sufficient reason to reject the panel's finding on this point.

We do not overlook the finding—which is supported by the record—that petitioners honestly believed that the Collinses had given them permission to retain the settlement funds. But the fact remains that an honest belief is simply not a defense for purposes of rule 8-101. (*Guzzetta* v. *State Bar* (1987) 43 Cal.3d 962, 976 [239 Cal.Rptr. 675, 741 P.2d 172, 65 A.L.R. 4th 1].)

■ Petitioners next claim that the level of discipline is excessive. Here we agree.

"The purpose of discipline is to protect the public, the courts, and the legal profession." (*Sands* v. *State Bar*, *supra*, 49 Cal.3d at p. 931.) To assure adequate protection, a sanction incorporating actual suspension is not required—public reproval is sufficient. Petitioners did indeed violate rule 8-101 by depositing the Collinses' settlement check into their general account instead of a client trust account (rule 8-101(A)), and by refusing to pay the funds over on request (rule 8-101(B)(4)). But there was much mitigation.

Most significant, petitioners honestly believed that the Collinses had given them permission to retain the settlement funds. Also, they are not likely to commit such misconduct in the future: they have generally exhibited good moral character; their failings here are aberrational.

After independent review, we are of the opinion that in all respects save one, the findings of fact and conclusions of law of the review department are sound and adopt them as our own. As is plain, its determinations generally follow those of the hearing panel, which are based in large part on the latter's assessment of credibility. We give such an assessment great weight. (*Sands* v. *State Bar*, *supra*, 49 Cal.3d at p. 929.) Indeed, we are strongly counseled to accept it here: the testimony of Dudugjian and Holliday was specific, consistent, and supported by documentary evidence; that of William and Janet Collins was not. We reject, however, the review department's determination that Dudugjian's misconduct was "wilful." In context, the statement is most reasonably read to mean that his behavior was not as mitigated as the panel believed. The record is otherwise.

We are also of the opinion, for the reasons stated above, that the appropriate discipline for petitioners is public reproval on condition of restitution and the successful taking of the Professional Responsibility Examination. We recognize that this sanction was proposed by the hearing panel and rejected by the review department. Although it is our general policy to give great weight to the review department's recommendation (e.g., *Hartford* v. *State Bar* (1990) 50 Cal.3d 1139, 1154 [270 Cal.Rptr. 12, 791 P.2d 598]), and to favor it over the panel's (e.g., *Galardi* v. *State Bar* (1987) 43 Cal.3d 683, 693 [238 Cal.Rptr. 774, 739 P.2d 134]), the facts compel departure from that policy here. We also recognize that public reproval is inconsistent with the Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V) (standards), specifically, standard 2.2(b): a violation of rule 8-101 not amounting to wilful misappropriation *"shall* result in at least a three month actual suspension from the practice of law, *irrespective of mitigating circumstances"* (std. 2.2(b), italics added). The standards, however, "are simply guidelines for use by the State Bar" (*Greenbaum* v. *State Bar* (1987) 43 Cal.3d 543, 550 [237 Cal.Rptr. 168, 736 P.2d 754]), and as such do not bind us (e.g., *Howard* v. *State Bar* (1990) 51 Cal.3d 215, 221-222 [270 Cal.Rptr. 856, 793 P.2d 62]). We conclude that on these facts—standard 2.2(b) notwithstanding—public reproval is indeed appropriate.

### III. DISPOSITION

It is ordered that petitioner Robert Paul Dudugjian be publicly reproved on the following conditions: (1) within 45 days from the date on which this order becomes effective he, jointly with petitioner Thomas Mack Holliday,

shall make restitution to William and Janet Collins in the amount of $5,356.94, plus interest at the rate of 10 percent per annum from April 16, 1984, until paid in full, and shall furnish satisfactory evidence of said restitution to the Office of the Clerk, State Bar Court, Los Angeles; and (2) within 1 year from the date on which this order becomes effective, he shall take and pass the Professional Responsibility Examination given by the National Conference of Bar Examiners.

It is also ordered that petitioner Thomas Mack Holliday be publicly reproved on the following conditions: (1) within 45 days from the date on which this order becomes effective he, jointly with petitioner Robert Paul Dudugjian, shall make restitution to William and Janet Collins in the amount of $5,356.94, plus interest at the rate of 10 percent per annum from April 16, 1984, until paid in full, and shall furnish satisfactory evidence of said restitution to the Office of the Clerk, State Bar Court, Los Angeles; and (2) within 1 year from the date on which this order becomes effective, he shall take and pass the Professional Responsibility Examination given by the National Conference of Bar Examiners.

This order is effective upon finality of this decision in this court. (Cal. Rules of Court, rule 953(a).)