**IMAGE TECHNICAL SERVICES, INC., et al., Plaintiffs**

v.

**EASTMAN KODAK COMPANY, Defendant.**

**No. C 87–1686 BAC.**

United States District Court, N.D. California.

May 17, 1993.

· Gordon B. Spivack, Coudert Brothers, James A. Hennefer, Law Offices of James A. Hennefer, San Francisco, CA, for plaintiffs.

Donn P. Pickett, McCutchen, Doyle, Brown & Enersen, San Francisco, CA, Jonathan W. Romeyn, Eastman Kodak, Rochester, NY, for defendant.

## ORDER

CAULFIELD, District Judge:

Defendant Eastman Kodak Company ("Kodak") brings a motion to disqualify plaintiffs' counsel, the Coudert Brothers Law Firm ("Coudert"). Upon consideration of the briefs and arguments of the parties, and good cause appearing therefrom, Kodak's motion to disqualify the Coudert firm is GRANTED.

## FACTS AND BACKGROUND

The Coudert firm has provided legal services to Eastman Chemical, one of Kodak's three major operating divisions, for the last six years. These services have covered a vast array of legal matters, including competition law questions, joint ventures, contract issues, tax issues, and questions concerning environmental law. Coudert preformed this work out of the Washington, D.C., New York, Paris, Brussels, Hong Kong and Singapore offices. For purposes of this motion, it is undisputed that the work performed by Coudert for Eastman Chemicals did not involve issues directly relevant to this litigation.[1]

The facts and procedural background of this litigation have been amply recorded in the orders issued by this court, as well as the decisions of the Ninth Circuit Court of Appeals[2] and the United States Supreme Court.[3] For purposes of the present motion, it is sufficient to note that in 1991, Kodak appealed to the United States Supreme Court a judgment of the Ninth Circuit reversing and remanding the order of Judge William Schwarzer dismissing plaintiffs' federal antitrust claims. Coudert was asked by James Hennefer, counsel for the ISOs, to participate in the briefing before the Supreme Court. The ISOs primary contact with the Coudert firm was Douglas Rosen-

thal. A conflicts check performed by Coudert disclosed that the firm had an ongoing relationship with Eastman Chemical and Kodak Pathe. The work for Eastman Chemical was performed primarily by Coudert's Hong Kong office. Mr. Rosenthal asked Owen Nee, the managing partner of Coudert's Hong Kong Office, to disclose the conflict to the Eastman Chemical representatives, and obtain their consent to Coudert's representation of the ISOs.

Mr. Nee planned to discuss the conflict during a separately arranged meeting on other business with Barry Falin, Director of Business Development for the Filter Products Organization of Eastman Chemicals, and Michael Chung, Manager of the Filter Products Organization. In preparation for that meeting, Mr. Nee discussed with Mr. Rosenthal what information was to be given to the Eastman Chemical business representatives. Mr. Rosenthal telefaxed Mr. Nee on July 13, 1991 as follows:

> I have seen your fax of today and have spoken both to Ken Katz and Steve Hudspeth. I am authorized by both of them to affirm we trust your judgment about what to say, *in passing*, about our involvement in the Kodak Supreme Court case, when you meet with officials of Kodak Chemical dealing with China this Monday.

> As a small modification to your proposed statement, might I suggest the following: Our *San Francisco* office *is going to participate in a brief contrary to the interests of the Kodak Corporation in the Supreme Court Appeal;* and after review of the matter *we have determined that the China representation is sufficiently distant that the actions of the San Francisco office do not constitute a conflict of interest.* (emphasis added)[4]

---

1. Coudert also represented a separately incorporated independent French subsidiary of Kodak, Kodak Pathe. For purposes of this opinion, the court deems Coudert's representation of Pathe irrelevant. *See,* State Bar of California Standing Committee on Professional Responsibility and Conduct, Formal Opinion No. 1989–113 (Parent and subsidiary corporations are separate entities, therefore, representation of a wholly owned subsidiary, let alone a separately incorporated subsidiary, does not create a conflict of interest).

2. 903 F.2d 612 (9th Cir.1990).

3. —— U.S. ——, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992).

4. Coudert's San Francisco office participated in two *amicus* briefs to the Supreme Court. Coudert's Washington, D.C. office "participated" in the brief for respondents on the merits before the Supreme Court.

After the meeting took place on July 23, 1991, Mr. Nee wrote Mr. Rosenthal and Mr. Hudspeth informing them that he "explained the matter in the form [they] sent to [him] by [their] telefax on July 12, 1991." Neither the documents submitted in opposition to Kodak's motion, nor the declaration of Mr. Nee, reflect that Coudert advised Falin and Chung of the nature of the conflict, the potential exposure to Kodak, or even that Kodak was a party to the Supreme Court action. Mr. Nee's telefax goes on to state that Messrs. Falin and Chung approved of Coudert's representation of the ISOs. Neither Messrs. Falin and Chung recall any such conversations. Mr. Chung testified specifically that even if he had been so informed, he did not recall Mr. Nee disclosing that Coudert would represent the ISOs at the district court level, or explaining the potential exposure Kodak faced in this action.

On September 20, 1991, Kodak was served with Respondent's Brief in the U.S. Supreme Court appeal. The brief identified Coudert as co-counsel for the ISOs. There is some dispute about when Coudert disclosed to Kodak that it would participate in the district court trial on remand. However, the parties agree that on July 30, 1992, Gordon Spivack of Coudert's New York office informed Gary Vangraafeiland, Senior Vice President and General Counsel of Eastman Kodak, that Coudert would participate in the preparation and trial of the ISO case in this court. Coudert filed a formal notice of appearance in this court on October 9, 1992.

### DISCUSSION

#### A. Applicable Rules of Conduct

■ Rule 110–3 of the Local Rules of Court for the Northern District of California provides that the conduct of counsel before this court is governed by "the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and decisions of any court applicable thereto."[5] Under California law, the decision whether or not to disqualify counsel is a matter addressed to the discretion of the trial judge. *Truck Ins. Exchange v. Fireman's Fund,* 6 Cal.App.4th 1050, 1055, 8 Cal.Rptr.2d 228 (1992).

■ At the time Coudert began its representation of the ISOs, the 1989 version of Rule 3–310 of the California Rules of Professional Conduct were in effect. That version states in relevant part:

(A) If a member has or had a relationship with another party interested in the representation ... the member shall not accept or continue such representation without all affected clients' informed written consent.

(B) A member shall not concurrently represent clients whose interests conflict, except with their informed written consent.

Under California authority, an attorney's conduct is to be evaluated by the Rules of Professional Responsibility in effect at the time of that conduct, even where subsequent amendments to those Rules are in force at the time of decision. *See Tomlinson v. State Bar,* 13 Cal.3d 567, 569 n. 1, 119 Cal.Rptr. 335, 531 P.2d 1119 (1975); *King v. State Bar,* 52 Cal.3d 307, 311 n. 4, 276 Cal.Rptr. 176, 801 P.2d 419 (1990); and *Dudugjian v. State Bar,* 52 Cal.3d 1092, 1094, n. 1, 278 Cal.Rptr. 90, 804 P.2d 715 (1991). As this court must apply California Rules of Professional Responsibility, including California case law, this court will apply the rules in effect at the time Coudert states that it obtained consent.[6]

**5.** Coudert argues that the California Rules of Professional Conduct do not apply to this case because the Coudert lawyers who represented the ISOs before the U.S. Supreme Court were acting outside of California, and were not members of the California Bar Association. This argument is without merit. First, as stated above, the standards of professional conduct *before this court* are those applicable under the California Rules of Professional Responsibility. Second, by Coudert's own admission, the disclosure made to the Hong Kong Eastman Chemical officials was

that the San Francisco office would participate in briefs before the Supreme Court. Aside from the fact that such a disclosure is insufficient to meet Coudert's duties to its clients (*see* Sect. C below), the disclosure about the San Francisco attorneys directly raises the duty of attorneys who are members of the California bar.

**6.** Plaintiffs argue that federal standards should determine what version of the rules apply. As Kodak correctly points out, the resolution of this issue does not materially alter the outcome of

### B. *Written Consent*

At the time Coudert was invited to participate in the brief before the Supreme Court in 1991, Coudert was actively representing Eastman Chemicals in a variety of international matters. Therefore, Coudert's representation of the ISOs conflicted with the interests of its existing client, Kodak. In 1991, Rule 3–310(B) provided that "[a] member shall not concurrently represent clients whose interests conflict, except with their informed written consent. . . ." Coudert admits that it failed to obtain written consent from Kodak before representing the ISOs.

### C. *Informed Consent*

■ Since Coudert failed to obtain written consent as required under former California Rule 3–310(B), Coudert failed to obtain consent. Even if written consent was not required, the court finds that Coudert failed to obtain "informed consent" under *Unified Sewerage Agency, etc. v. Jelco, Inc.*, 646 F.2d 1339 (9th Cir.1981). Plaintiffs argue that under *Jelco* this court is bound by a federal standard for disqualification motions.[7] The court does not apply the federal standard for the reasons stated in this opinion but finds that the consent obtained here would be insufficient to meet Coudert's burden under the federal standard. Plaintiffs offer the declaration of Mr. Nee, in which he states that during a July 1992 meeting with Barry Falin and Michael Chung, businessmen who were managers at Eastman Chemical in Hong Kong, he disclosed to Eastman Chemical the representation of the ISOs. Coudert's own characterization of the disclosures fails to meet the requirements announced in *Jelco*. *Jelco*, as in this case, involved an issue of representation adverse to a present client. In reviewing the obligations of counsel as to present clients, the Ninth Circuit stressed that "representation adverse to a *present* client must be measured not so much as against the similarities in litigation, as against the duty of undivided loyalty which an attorney owes to each of his clients." *Jelco*, 646 F.2d at 1345.

The *Jelco* court held that to avoid disqualification under Disciplinary Rule DR5–105(B) of the Code of Professional Responsibility of the State of Oregon,[8] an attorney must satisfy DR5–105(C)'s two conditions: "First, each client must consent to the multiple representation after full disclosure of the risks. Second, it must be 'obvious' that the attorney can adequately represent the interests of each client." As to the consent prong of this analysis, the court cited *In re Boivin*, 271 Or. 419, 533 P.2d 171 (1975), as the leading Oregon case on the meaning of "consent" in Cannon 5 of the disciplinary rules of the State Bar of Oregon. In *Boivin*, the court stated that consent must be informed consent, made after full disclosure of all material facts:

> To satisfy the requirement of full disclosure by a lawyer before undertaking to represent two conflicting interests, it is *not sufficient that both parties be informed of the fact that the lawyer is undertaking to represent both of them, but he must explain to them the nature of the conflict of interest in such detail so that they can*

this motion. The California Rules of Professional Responsibility are disciplinary rules, and merely inform the law controlling motions to disqualify. The "rules are not intended to supersede existing law relating to . . . motion[s] for disqualification of counsel due to conflict of interest. . . ." Discussion to Rule 1–100. Under California law, there is a clear prohibition of attorneys representing two or more clients in the same matter without informed written consent. *See Truck Insurance Exchange*, 6 Cal.App.4th, *supra*, at 1055, 8 Cal.Rptr.2d 228. It is immaterial that the new version may have created a lesser standard as plaintiffs suggest.

7. At the district court level, pursuant to that court's local rules, the Code of Professional Responsibility of the State of Oregon was applied.

While the Ninth Circuit in *Jelco* relied upon cases applying American Bar Association Model Rules of Professional Conduct (similar to those found in the Oregon rules) in reviewing the standard for disqualification, the Ninth Circuit expressly declined to express an opinion as to which law applied. *Jelco*, 646 F.2d at 1342, n. 1 (pursuant to the Local Rules of the Oregon District Court, that court applied Oregon law).

8. Disciplinary Rule DR5–105(B) provides that: "A lawyer shall not continue multiple employment if the exercise of his independent professional judgment on behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR5–105(C)." Code of Professional Responsibility of the State of Oregon (1980).

*understand the reasons why it may be desirable for each to have independent counsel,* with undivided loyalty to the interests of each of them.

*Boivin,* 533 P.2d at 174 (emphasis added).

Plaintiffs argue that the consent obtained from Mr. Falin was informed and, moreover, that Kodak's decision to continue to employ Coudert, even after the current motion was filed, is indicative of Kodak's consent. The court disagrees. As stated above, there is a dispute about Mr. Falin's consent. Moreover, such consent is not informed consent. By Coudert's own admission, Messrs. Falin and Chung were told only that the San Francisco office of Coudert was going to participate in a brief before the Supreme Court adverse to Kodak's interests. Coudert did not explain how the representation would be adverse to Kodak's interest, nor did Coudert inform Kodak of the fact that Coudert's New York and San Francisco offices were actually going to appear on the brief before the Supreme Court. In fact, the July 13, 1991 telefax and Mr. Nee's declaration do not state that Mr. Nee told Messrs. Falin and Chung that Kodak was a party to the action before the Supreme Court, the nature of the underlying action, or the potential exposure to Kodak, should the ISOs prevail.[9]

In *Jelco,* the court found that counsel had *twice* alerted Jelco's *counsel* to the potential conflict and asked whether Jelco wished to continue counsel's retainer. On two separate occasions after full disclosure of the conflicts, and discussions with its own attorneys, Jelco consented to the representation. In contrast, the disclosure made by Coudert in this matter cannot be construed as "informed."

The form, content and nature of the disclosure to Messrs. Falin and Chung was deficient under the standards for informed consent. Under both the California and ABA Rules of Professional Conduct, Coudert owes its client, Kodak, the highest level of undivided loyalty. Coudert's duties to disclose any representation adverse to the interests of Kodak cannot be fulfilled by mentioning "in passing" participation in a brief contrary to

the interests of the client without stating the details of *why* the interests are contrary. The exposure Kodak faces in this action is substantial. Coudert's failure to fully disclose that exposure, as well as the extent of its participation in this action, falls short of the "undivided loyalty" it owes to its client. The details are essential to informed consent so that the client can weigh and measure the nature of the contrary interests and give informed consent based upon knowledge of material facts.

### D. *Waiver*

"Where the party opposing the motion can demonstrate prima facie evidence of unreasonable delay in bringing the motion causing prejudice to the present client, disqualification should not be ordered." *Western Continental Co. v. Natural Gas Corp.,* 212 Cal.App.3d 752, 763, 261 Cal.Rptr. 100 (1989). Plaintiffs argue that Kodak waived its right to object to its representation of the ISOs by failing to object in a timely fashion. Coudert's name appeared on Respondent's Brief before the Supreme Court, which was served on September 20, 1991. Accordingly, plaintiffs' argument that Kodak had notice of the adverse representation well before the instant motion is without merit. In order to successfully claim laches as a defense to this motion, plaintiffs must establish (a) Kodak long ago had notice of the adverse representation, (b) Kodak intentionally delayed moving for Coudert's disqualification, (c) plaintiffs are severely burdened by the delay, and (d) the extreme and intentional delay allowed Kodak to obtain a tactical advantage. *See Western Continental,* 212 Cal.App.3d at 763–764, 261 Cal.Rptr. 100.

In this day of multinational corporations and law firms, it is possible that a corporation would not be aware of the law firms representing its overseas divisions. Moreover, while Coudert is charged with the responsibility of performing conflict checks upon taking on a new client, Kodak as the client is under no such obligation. Absent some showing that Kodak was aware of Cou-

---

**9.** *See Florida Ins. Guar. Ass'n, Inc. v. Carey Canada,* 749 F.Supp. 255 (S.D.Fla.1990), in which that court, in granting a motion to disqualify counsel, found "[m]ost gravely, [the fact that] the ... 'consultation' did not disclose the magnitude of the adverse interests at issue...." *Id.* at 259.

dert's duel representation prior to September 1992, the court will make no finding of waiver based on the appearance of the Coudert firm on a brief before the Supreme Court.

Plaintiffs have not shown that Kodak has gained any tactical advantage from the alleged delay in bringing this motion after September 1992. Even assuming that Coudert did disclose the conflicting representation, Coudert's disclosure indicated only that Coudert would participate in a brief before the Supreme Court. Coudert did not indicate that it would participate in this action at the district court level until July 1992, after the case had been remanded back to this court. Since the matter was remanded, the action has been stayed. The court finds that in light of the procedural history of this case, and Coudert's involvement, the delay was not extreme, prejudicial, intentional, a severe burden; nor did the delay allow Kodak any tactical advantage.

### E. *Policy Considerations*

 Plaintiffs argue that an order disqualifying Coudert would violate policy. This argument ignores the long-standing rule in both California and Ninth Circuit cases prohibiting attorneys from accepting employment adverse to a current client without the client's informed consent. In light of this court's ruling that Coudert failed to secure Kodak's informed consent to the adverse representation, the policy issues triggered by this motion tip decidedly toward Kodak. The court and the legal profession have a strong interest in insuring that counsel fulfill the highest duty of loyalty to clients. While plaintiffs' argument that multinational clients (such as Kodak) will often consult international law firms (such as Coudert) on discreet legal issues is well taken, plaintiffs have cited to no California or Ninth Circuit authority creating an exception to the rules about representation adverse to an existing client because of these factors.

Whether a matter is international, multinational or domestic, the standard of conduct for explanation of material facts underlying a potential conflict of interest is the same. The duty to the client of undivided loyalty and necessity of informed client consent to adverse representation applies internationally no matter how difficult the communication hurdles. Law is a profession of service premised upon representation of the client with the highest duty of loyalty and the deepest regard for the trust of the client. Therefore, policy requires the disqualification of Coudert.

### ORDER

For the foregoing reasons, and good cause appearing therefrom, the court orders the following:

1. Defendant's motion to disqualify the Coudert Firm is GRANTED.

2. The parties cross-motions for sanctions is DENIED.